MELVIN HENDERSON AND WIFE, BEATRICE W. HENDERSON, v. SECURITY MORTGAGE AND FINANCE COMPANY, INC., AND JOSEPH H. WERNICK AND WIFE, PAULINE F. WERNICK.

(Filed 20 March 1968)

**1. Corporations § 1—**

The mere fact that one or two persons own all of the stock of a corporation does not make the acts of the corporation the acts of the stockholders so as to impose liability therefor upon them. G.S. 55-3.1.

**2. Same—**

Where a corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his unlawful activities, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person.

**3. Same—**

Evidence of usurious transactions by the dominant shareholder of a finance company who made no pretense of keeping his activities separate from those of the corporation *is held* to justify trial court's action in disregarding the corporate entity.

**4. Mortgages and Deeds of Trust § 1—**

Where it appears from the evidence that the plaintiffs were indebted to defendants and that they executed a deed conveying to defendants a fee simple title to their house and lot, and contemporaneously therewith, defendants executed a "rent" agreement contracting to reconvey the house and lot to plaintiffs upon their payment of the indebtedness, the documents will be held to have the effect of a mortgage by the plaintiffs to the defendants.

**5. Mortgages and Deeds of Trust § 28—**

Where a deed and a contract constitute an equitable mortgage, and there is no showing of a default by the mortgagors in any provision of the contract, the mortgagee, having knowledge that there was no default, cannot by his purchase of the property at a foreclosure sale engineered by him under another deed of trust acquire a good title as against the demands of the mortgagors for reconveyance upon their payment of the indebtedness pursuant to the contract.

**6. Usury § 1—**

In order to constitute usury there must be a loan or forbearance of money, with an understanding between the parties that the money loaned shall be returned, and a payment or an agreement to pay a greater rate of interest than that allowed by law, with the corrupt intent to take more than the legal rate for the use of the money loaned.

**7. Same—**

A fee collected by the broker or agent of a borrower for procuring a loan is not usury; a commission charged by the lender in addition to the maximum rate of interest allowed by statute constitutes usury.

**8. Same—**

Plaintiff's evidence to the effect that they executed a note to defendant for $1800 at six per cent interest from date, but that they received only $1200, and that for their note for $280, payable in 28 weeks, they received only $140, *is held* sufficient to show a charge of interest in excess of the maximum rate allowed by statute. G.S. 24-1.

**9. Usury § 6—**

A right of action to recover the penalty for usury accrues upon each payment of usurious interest when that payment is made, each payment of usurious interest giving rise to a separate cause of action which is barred by the statute of limitations at the expiration of two years from such payment.

**10. Usury § 2—**

The renewal of a usurious agreement whereby the debtor makes a new promise to pay the obligation in full, including the usurious interest, does not constitute a settlement of plaintiffs' right to invoke the statutory remedy for usury so as to purge the renewal contract of the taint.

**11. Evidence § 19—**

In an action to recover the statutory penalty for usury paid, evidence that the mortgagee engaged in similar usurious transactions with other

HENDERSON *v.* FINANCE CO.

borrowers at about the same time as those with the plaintiff is competent upon the question of the existence of a corrupt intent to exact usury.

**12. Payment § 3; Mortgages and Deeds of Trust § 17—**

Where the record fails to show how the mortgagee allocated the debtor's payments for obligations owing to him, the law will allocate those payments to the lawful and valid obligations of the debtors rather than to interest illegally charged.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Crissman, J.,* at the 29 May 1967 Civil Session of GUILFORD (Greensboro Division). This case was docketed and argued as No. 699 at Fall Term 1967.

The plaintiffs brought suit to recover of the defendants, jointly and severally, $6,000, alleged to be double the amount of usury paid by them to the defendants, and for a judgment declaring the plaintiffs to be the owners of a certain house and lot, upon which there is a deed of trust, to be assumed by the plaintiffs, in favor of Home Federal Savings & Loan Association, hereinafter called Home Federal, and directing the individual defendants to make a deed therefor to the plaintiffs. From a judgment declaring the plaintiffs to be the owners of the land, directing the individual defendants to execute such deed, subject to such deed of trust, and providing for the recovery by the plaintiffs of $4,379 from the corporate defendant, hereinafter called Security, and Joseph Wernick, hereinafter called Wernick, all of the defendants appeal. They assign as error numerous rulings upon the admission of evidence, certain portions of the charge of the judge to the jury and the denial of their motions for judgment of nonsuit and for the addition of Home Federal as a party defendant.

The complaint alleges that the individual defendants and Security are, in fact, one and the same. The answer, filed by all the defendants jointly, denies this. The complaint also alleges the transactions referred to below, and that the plaintiffs have overpaid to the defendants all amounts owed them. The answer denies that any usurious interest was charged or collected, alleges that Security made no loan but acted only as a broker, pleads the two year statute of limitations with reference to any usury, counterclaims for $5,000 alleged to be still due and owing to the defendants from the plaintiffs, and alleges that Wernick ought to be declared the owner of the land, subject only to the deed of trust for the benefit of Home Federal.

Summons was issued 12 January 1966. The complaint was filed 19 April 1966, pursuant to a consent order.

The evidence introduced by the plaintiffs, including that admitted over objection, if true, is sufficient to show:

1. On 30 April 1962 the plaintiffs owned the house and lot, subject to a deed of trust securing their note for $10,500 to American Federal Savings & Loan Association, hereinafter called American. They were also indebted in varying amounts to other creditors.

2. On 25 April 1962 the plaintiffs went to the office of Security and conferred with Wernick. The male plaintiff, hereinafter called Henderson, made application for "a loan" of $3,300, using Security's loan application form. At the bottom of the printed form, immediately above his signature, appeared the following:

> "I hereby retain Security * * * as my agent to secure for me a second mortgage loan in the amount of $3,300 * * *. I further agree to pay Security * * * a fee of ............ dollars for their services in obtaining this loan, plus appraisal fees and closing costs."

3. Subsequently, Wernick, without authority from the plaintiffs, inserted the figure $400 in the blank space so left upon the application form.

4. The above quoted provision upon the application form was not called to the attention of the plaintiffs, and nothing was said to them with reference to Security's or Wernick's acting as an agent or broker to procure a loan from some other person. Henderson did not know of any other person's being involved in the making of the loan and never agreed to pay Security a fee for obtaining a loan from any other person.

5. When the plaintiffs returned to the office of Security on 30 April 1962, Wernick said that "he" could not let Henderson have more than $1,200. The plaintiffs thereupon signed and delivered to Wernick a note payable to bearer for $1,800 plus interest at 6% and a deed of trust upon the house and lot. The note provided for 36 monthly payments of $59 each, a total of $2,124. Wernick then told Henderson that the difference between the $1,200 which "he" was letting Henderson have and the $1,800 specified in the note was for interest, "he" not having "carrying charges." In return for the $1,800 note, $200 was paid to Henderson by a check drawn by Security, $878 to one of his creditors and approximately $117 to another of his creditors. Nothing else was received by the plaintiffs. They were given no statement showing a breakdown of the disbursement of the $1,800.

6. In all of their numerous visits to the office of Security the plaintiffs saw no one other than Wernick or Mrs. Wernick. All payments made by them were made to Security and were received from them by Wernick. When the loan was made, Henderson was given a card on which payments by him were to be and were entered by Wernick. The card does not show the name of the lender but states that payments were to be made at the office of Security.

7. On 18 December 1962 the plaintiffs again went to the office of Security and asked Wernick to make another loan to them, which he agreed to do. On this occasion they signed and delivered to Wernick a note payable to bearer for $280, payable $10 per week for 28 weeks, and another deed of trust on the same house and lot. In return they received $140. They were given another card, on which payments on this loan were to be and were entered by Wernick. The card stated the amount of the loan as $290. It shows payments totaling $70 through 22 March 1963, all credited to principal.

8. The card so given to the plaintiffs with reference to the $1,800 transaction shows 11 payments of $59, one per month, through 22 March 1963, $50 of each such payment being credited to the principal of the note, $9.00 to interest.

9. On 29 March 1963 the plaintiffs executed and delivered to Security their warranty deed conveying the above land to Security in fee simple, subject to the $10,500 deed of trust securing their indebtedness to American.

10. Contemporaneously with the above deed, the plaintiffs and Security entered into a written agreement reciting that, as a result of their default in payments to American, the plaintiffs had conveyed their land to Security in consideration of the following: Security agreed to "rent" the property to the plaintiffs for $159.60 per month, which "rent" the plaintiffs undertook to pay until they had paid in full their above two notes ($1,800 and $280) plus $712.14, with interest at 6%, which amount Security had paid American to stop foreclosure of the deed of trust securing it, plus $18.50 "for legal and filing fees." This agreement provided that the plaintiffs would also pay taxes, insurance and repairs upon the property, and that, upon the completion of such payments, Security would convey the land back to the plaintiffs. Though the "rental" agreement did not so state, it was understood by the parties that from the "rent" payments Security would first make the payments thereafter coming due from the plaintiffs to American, and this was done, the total

amount so paid by Security to American being $1,341.90 from 7 May 1963 to 9 June 1964.

11. A card similar to those above mentioned, entitled "Rental Account," was given to Henderson and upon it payments totaling $2,385.06 are entered and initialed by Wernick. These payments, 19 in number, were made from 30 March 1963 to 30 June 1964. Thereafter, the plaintiffs continued to make such payments as they came due, though not so shown on this card.

12. Total payments by Henderson to Security and Wernick, these not being broken down as to the item to which they were to be applied, were as follows:

| | |
|---|---|
| From 4 June 1962 to 31 December 1962 | $ 479.00 |
| From 13 January 1963 to 31 December 1963 | 1,781.96* |
| From 15 January 1964 to 31 December 1964 | 1,780.20 |
| From 1 February 1965 to 3 December 1965 | 1,360.00 |
| From 3 January 1966 to 31 January 1966 | 250.00 |
| Grand Total | $5,651.16 |

\* $346 of the total paid in 1963 preceded the "rent" agreement.

13. On 20 June 1964 the trustee in the deed of trust securing the above mentioned note made by the plaintiffs for $280 (sometimes referred to as $290) executed a deed conveying the above mentioned land to Wernick, reciting the said trustee's foreclosure sale under such deed of trust.

14. The said trustee's report to the clerk of the superior court, dated 30 June 1964, shows that the purchase price of the house and lot at the foreclosure sale was $290 and, after paying expenses of the sale, there was "credited to note and deed of trust" $258.79.

15. On 2 July 1964 Wernick and wife executed a deed of trust upon the house and lot to secure their note of that date to Home Federal for $10,500. Of the proceeds of this note, $9,245.20 was paid to American and the above deed of trust securing the note of the plaintiffs to American was cancelled; $1,176.30 was paid by Home Federal to Wernick and the balance was applied to sundry closing costs of that loan other than an attorney's fee. The disposition made by Wernick of the portion of the proceeds so received by him does not appear.

16. Eighteen payments of $75.25 each, totaling $1,354.50, were made by Security to Home Federal from 3 August 1964 to 12 January 1966 for application upon the principal and interest of Wer-

nick's note to Home Federal. All payments due Home Federal since that date, on which this suit was instituted, have been paid by the plaintiffs direct to Home Federal.

Evidence introduced by the defendants was to the following effect:

1. Wernick is president of Security, which was incorporated in February 1962. He and his wife are its only stockholders and do everything in connection with its operations. When the plaintiffs first applied to. him, he informed them that he was a real estate broker and would endeavor to obtain a loan for them for which services his fee would be $400.

2. He submitted the application to Jerry B. Hyman, who was willing to make a loan in the amount of $1,800 only. This Wernick reported to Henderson, reducing his "broker's" fee to $300, and the loan was so made. From the $1,800 Wernick paid $300 to Security for a "brokerage fee," $62.25 for miscellaneous closing expenses, and the remainder to Henderson or his creditors.

3. The loan of $280 on 18 December 1962 was made by Security. From its proceeds $201.17 was paid to Henderson, $59 was applied to a payment due on the first transaction, and $12.25 was paid out for the preparation of the deed of trust and recording fees. (The disposition of the remainder of $7.58 was not shown.)

4. On 22 March 1963 Wernick learned· that American was in process of foreclosing the deed of trust securing the plaintiffs' note to it. To prevent such foreclosure Wernick agreed to pay to American $737.14, which he did, and the plaintiffs agreed to convey the house and lot to Security, which they did. Thereupon, Security and the plaintiffs entered into the above mention "rent" agreement. The "rent" payments were "kept current."

5. The loan from Home Federal, refinancing the plaintiffs' obligation to American, was obtained with the plaintiffs' approval.

6. The foreclosure of the deed of trust securing the $280 note, resulting in the trustee's deed to Wernick, was to remove from the property a subsequent deed of trust placed upon it by the plaintiffs and was with Henderson's approval.

7. With the $1,176.30 received by Wernick from the Home Federal loan, he paid Hyman the balance of $940.36 then due on the plaintiffs' $1,800 note. Prior to that time Wernick had remitted to Hyman payments received from the plaintiffs on that note.

8. There is now due Wernick, or Security, on account of the advancement to American, including interest and insurance advanced, $1,058.37.

Jerry Hyman, called as a witness for the defendant, testified to the following effect:

He had no direct dealings with the plaintiffs. He issued his check in the amount of $1,800 to Security upon the note and deed of trust of the plaintiffs in that amount. Payments were made to Hyman by Security. On 2 July 1964 the then balance of the loan, $940.36, was paid by Security and Hyman delivered the note and deed of trust to Wernick. Prior thereto payments on the note were in arrears and Hyman demanded payment in full from Wernick as endorser. Hyman had "bought" other loans from Wernick.

*Alston, Alexander, Pell & Pell for defendant appellants.*

*Hoyle, Boone, Dees & Johnson and Harry Rockwell for plaintiff appellees.*

LAKE, J. It is alleged in the complaint and admitted in the answer that Security is a corporation. Nevertheless, it is apparent from the record, including the testimony of Wernick, himself, that throughout the entire series of transactions with and concerning the plaintiffs, Wernick made no effort to keep, or pretense of keeping, his interest and activities separate and apart from those of the corporation. Wernick and his wife were its only stockholders. There is nothing to show her interest was other than nominal. The corporation was a mere device or puppet in Wernick's hands.

The mere fact that one person (two in the present case) owns all of the stock of a corporation does not make its acts the acts of the stockholder so as to impose liability therefor upon him. G.S. 55-3.1; *Wall v. Colvard, Inc.,* 268 N.C. 43, 149 S.E. 2d 559; *Acceptance Corp. v. Spencer,* 268 N.C. 1, 149 S.E. 2d 570; *Whitehurst v. FCX Fruit and Vegetable Service,* 224 N.C. 628, 32 S.E. 2d 34. However, when, as here, the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation. 18 Am. Jur. 2d, Corporations, §§ 14-17; 18 C.J.S., Corporations, § 7b; Fletcher, Cyclopedia Corporations, §§ 41, 41.1 and 45. As Sanborn, J., said in *United States v. Milwaukee Refrigerator Transit Co.,* 142 F. 247, 255, "[W]hen the

notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." The present record fully justifies the action of the trial court in treating Security and Wernick as one and the same so as to impose upon it and him, alike, liability for the payment of the statutory penalty for the exaction of usury in the transactions with the plaintiffs.

It is undisputed that on 29 March 1963 the plaintiffs were the owners in fee simple of the house and lot, subject to three deeds of trust, the first securing an indebtedness to American, the second and third securing notes given to Security, there being no contention that the note secured by the third deed of trust was ever held or owned by anyone other than Security. At that time, the plaintiffs executed a deed conveying the fee simple title to Security, and, contemporaneously therewith, Security entered into the so called "rent" agreement with the plaintiffs. By it Security contracted to reconvey the house and lot to the plaintiffs upon their payment of the above two notes and the advances made by Security to American for the benefit of the plaintiffs. These two documents must be construed together. Their effect is that of a mortgage by the plaintiffs to Security. *Hardy v. Neville*, 261 N.C. 454, 135 S.E. 2d 48; *O'Briant v. Lee*, 214 N.C. 723, 200 S.E. 865. "If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance, or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used, and whatever stipulations they may have inserted in the instruments." 3 Pomeroy, Equity. Jurisprudence, 4th ed., § 1195, quoted with approval in *O'Briant v. Lee, supra.*

One of the debts secured by this combination of deed and "rent" agreement was the note for $280 held by Security and also secured by the third deed of trust. There is no showing of a default in any provision of the "rent" agreement, which had the effect of extending the time for paying the note. On the contrary, the testimony of Wernick, himself, is that the "rent" payments were kept current. Thus, at the time of the purported foreclosure of the third deed of trust, and the resulting conveyance of the house and lot to Wernick by the trustee therein, all payments upon this obligation had been made by the plaintiffs according to the agreement of the parties. Wernick,

having engineered the purported foreclosure with knowledge that there was no default in the payment of the indebtedness secured by the deed of trust, could not, by purchasing at the foreclosure sale, acquire a good title as against the demand of the plaintiffs for reconveyance upon the payment of their indebtedness pursuant to the "rent" agreement. Furthermore, he thereafter continued to collect from the plaintiffs the "rent" payments and apply them pursuant to the "rent" agreement. He also refinanced the indebtedness to American for the benefit of the plaintiffs, according to his testimony. He thus continued to recognize the rights of the plaintiffs in the property under the "rent" agreement after the purported foreclosure sale.

The verdict of the jury establishes that nothing is owing by the. plaintiffs to the defendants upon their counterclaim; that is, upon. any of the obligations secured by the combination of absolute deed: and "rent" agreement, which, as above shown, was a mortgage in effect. Therefore, there was no error in the judgment declaring the plaintiffs to be the owners of the land and requiring Wernick and his wife to execute a deed to them, unless there was error otherwise in the proceeding below. In *Oliver v. Piner*, 224 N.C. 215, 29 S.E. 2d 690, this Court, speaking through Schenck, J., said:

> "There being no evidence of a breach by the parties of the first part in the performance of the conditions in the deed of trust authorizing a foreclosure thereof, the deed from the party of the second part, the trustee, joined in by the party of the third part, the *cestui que trust*, who was likewise the assignor of the last and highest bid at the foreclosure sale, to the plaintiffs is rendered void * * *."

There was no error in the refusal of the trial court to order Home Federal to be made a party to this action. Neither the plaintiffs nor the defendants attack the validity of the note held by Home Federal or the deed of trust securing it. The plaintiffs, in their complaint, recognize the validity of this obligation, and of the deed of trust securing it, and state that they are to assume the obligation upon the conveyance of the house and lot to them by the defendants. Home Federal asserts no right other than its rights under this note and deed of trust. It has no interest in the controversy between the parties to this action and its presence in the action is not necessary to the adjudication of that controversy. The judgment below must be, and is hereby, modified, however, so as to provide, in accordance with the prayer of the complaint, that the deed to be made by the defendants shall provide for the assumption by the plaintiffs of the obligation

to Home Federal as distinguished from the present provision in the judgment that the land is to be conveyed to the plaintiffs, subject only to the deed of trust securing that obligation.

This Court has frequently stated that the elements of usury are these: (1) A loan or forbearance of money; (2) an understanding that the money loaned shall be returned; (3) payment or an agreement to pay a greater rate of interest than that allowed by law; and (4) a corrupt intent to take more than the legal rate for the use of the money loaned. *Preyer v. Parker,* 257 N.C. 440, 125 S.E. 2d 916; *Bank v. Wysong & Miles Co.,* 177 N.C. 380, 99 S.E. 199; *Doster v. English,* 152 N.C. 339, 67 S.E. 754.

By hypothesis, one who makes no loan but, as broker or agent of the borrower, finds a lender and procures the making of a loan by him, has not received usury when he collects a fee for his services. If, however, the lender, himself, charges a commission in addition to the maximum rate of interest permitted by the statute, such charge is usury. *Arrington et al., v. Goodrich et al.,* 95 N.C. 462. "A profit, greater than the lawful rate of interest, intentionally exacted as a bonus for the loan of money, * * * is a violation of the usury laws, it matters not what form or disguise it may assume." *Doster v. English, supra.*

The court below correctly instructed the jury as to the elements of usury and as to the nature of a broker's services. In its charge it stated the contention of the defendants that, as to the $1,800 note, the difference between the face of the note and the amount received therefor by the plaintiffs or paid out for their benefit was a commission charged by Security as a broker and not a bonus exacted by it as lender. We find no merit in any of the exceptions to the charge, either as to its contents or as to the alleged omissions therefrom. As to whether the defendants acted as a broker in the $1,800 matter, there was a conflict between the testimony of the plaintiffs and that of the defendants. The jury accepted the plaintiffs' version.

The plaintiffs' evidence was to the effect that in return for their note of $1,800 they received only $1,200, the note providing for interest on $1,800 at 6% from date. The plaintiffs' evidence is that for their note for $280, payable in 28 weeks, they received only $140. The defendants do not contend that in this second transaction they acted as broker. Taking the plaintiffs' evidence to be true, as must be done upon a motion for judgment of nonsuit, it is clearly sufficient to show a charge of interest in excess of the maximum rate allowed by the statute. G.S. 24-1.

G.S. 24-2 provides that the charging of usury results in "a forfeiture of the entire interest which the note or other evidence of debt

carries with it, or which has been agreed to be paid thereon." It further provides that in event a greater rate of interest than that allowed by law has been paid, the person so paying usury may recover twice the amount of interest paid. G.S. 1-53 provides that an action to recover the penalty for usury paid must be brought within two years, and an action for "the forfeiture of all interest for usury" must also be brought within two years.

The right of action to recover the penalty for usury paid accrues upon each payment of usurious interest when that payment is made, each payment of usurious interest giving rise to a separate cause of action to recover the penalty therefor, which action is barred by the statute of limitations at the expiration of two years from such payment. *Ghormley v. Hyatt,* 208 N.C. 478, 181 S.E. 242; *Trust Co. v. Redwine,* 204 N.C. 125, 167 S.E. 687; *Sloan v. Insurance Co.,* 189 N.C. 690, 128 S.E. 2; See also Annot., 108 A.L.R. 622, 623, 633.

The plaintiffs' evidence shows that 11 payments of $59 each were made on the $1,800 note more than two years prior to the commencement of this action, and that of each such payment $9.00 was allocated by the defendants to interest, the plaintiffs apparently assenting to such allocation. The right of action to recover the penalty for these payments, aggregating $99, was, therefore, barred by the statute of limitations at the time this suit was instituted. As to the note for $280, however, all of the evidence indicates that the only payments made more than two years prior to the institution of this action were allocated by the defendants to the principal and were, in the aggregate, less than the principal actually advanced to the plaintiffs on that loan. Consequently, no right of action on account of interest paid upon the $280 note was barred by the statute of limitations when this suit was instituted.

The deed and "rent" agreement of 29 March 1963 were, in effect, a renewal of the $1,800 note and the $280 note. In the "rent" agreement the plaintiffs made a new promise to pay these notes "in full," including the usurious interest therein provided. At that time the controversy concerning usury had not developed. Such a renewal of the original obligations does not constitute a settlement of the plaintiffs' right to invoke the statutory remedy for usury so as to purge the renewal contract of the taint. *Mortgage Co. v. Zion Church,* 219 N.C. 395, 14 S.E. 2d 37; *Hill v. Lindsay,* 210 N.C. 694, 188 S.E. 406.

It is undisputed that the plaintiffs made the monthly payments provided for in the "rent" agreement from its date to the commencement of this action. Nine such payments appear to have been made more than two years prior to the commencement of this action. It is clear from the record that after a substantial portion of these pay-

ments by the plaintiffs to Security was paid over by Security to American for the account of the plaintiffs, the remainder was retained by Security for application to the plaintiffs' obligations to it. However, the record does not show that Security made any allocation of such remainder between principal and interest or between the $1,800 note, the $280 note and the money previously advanced by Security to American. That being true, the law will allocate those payments to the lawful and valid obligations of the plaintiffs rather than to interest illegally charged. The aggregate of such payments made more than two years prior to the institution of this suit, after subtracting the amounts paid over to American, was less than the total of such lawful obligations. Consequently, the record does not show any payments of interest more than two years before the institution of this action, except the $99 above mentioned. There is, therefore, ample evidence of usury paid within two years prior to the institution of this action and, consequently, the motion for judgment of nonsuit upon the action for the recovery of the penalty for such usury was properly overruled.

There was no error in admitting the testimony of Wernick, on cross examination, as to other similar transactions with other borrowers at about the same time as those with the plaintiffs. This evidence was competent on the question of the existence of a corrupt intent to exact usury, which is an element of the plaintiffs' right of action. See Stansbury, North Carolina Evidence, 2d ed., § 92.

The jury found that the amount of usurious interest paid by the plaintiffs to Security was $2,189.50. In his charge to the jury, the trial judge stated three times that the plaintiffs contended the total amount of usury paid by them to the defendants was $2,189.50, and that the plaintiffs contended the jury should answer the issue in that amount. He instructed the jury that, on the other hand, the defendants contended that no usury had been charged or paid. The record does not show that any error in the statement of the parties' contentions was called to the attention of the court by either party.

The above figure does not appear, as such, at any other point in the record. Apparently, it is a figure used by counsel for the plaintiffs in their argument of the case to the jury. We have not been favored by either party with a statement analyzing and summarizing the statistical data contained in the numerous exhibits and oral testimony relative to the several transactions involved and the numerous payments made on account of each of them. No error in the jury's computation has been called to our attention by the defendants. However, it is apparent that the jury, in determining the

amount of usury paid, included those payments aggregating $99 which, as above shown, were made more than two years before this action was instituted and, as to which, the plaintiffs' right to recover the statutory penalty was barred. The judgment should, therefore, be modified by deducting from the amount of recovery adjudged the sum of $198, this being double the amount of the interest payments as to which the statute of limitations had run. The amount which the plaintiffs are entitled to recover of the defendants is, therefore, hereby reduced from $4,379 (the amount of the judgment below) to $4,181.

In summary, the judgment below must be, and is hereby, modified by reducing the amount of recovery for usury paid to $4,181, and by modifying that part requiring the execution of a deed to the plaintiffs by Wernick and wife so as to direct that such deed shall provide for the assumption by the plaintiffs of the indebtedness to Home Federal secured by the deed of trust executed to it by Wernick and wife, above mentioned. As so modified, the judgment is affirmed.

Modified and affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.