WAFF BROS., INC. v. BANK OF NORTH CAROLINA, N.A.; DAVIS SAWYER, SHERIFF OF PASQUOTANK COUNTY; CAROLINA-ALBE-MARLE CORPORATION; VACATION PROPERTIES, INC.; AND SPENCER BERGER

No. 751SC28

(Filed 7 May 1975)

1. Injunctions § 12— preliminary injunction — showing required

At a hearing for a preliminary injunction pending the final hearing on the merits, the burden is on the party seeking injunctive relief to establish (1) that there is probable cause to believe that the party will ultimately prevail in a final determination of the case, and (2) that irreparable harm will be suffered by the party if the injunctive relief is not granted.

2. Injunctions § 12— preliminary injunction to restrain execution sale — no showing of irreparable damage

Plaintiff who held a lien on 48.672 acres for labor and materials furnished was not entitled to a preliminary injunction restraining

an execution sale of the property to satisfy a judgment obtained by a prior lienholder where plaintiff offered no evidence as to the value of the 48.672 acres, no evidence that the prior lienholder's judgment and plaintiff's judgment could not both be satisfied in full by a sale of the 48.672 acres, and no evidence that plaintiff would be irreparably damaged if injunctive relief was not granted.

APPEAL by plaintiff from *Lanier, Judge.* Judgment entered 5 November 1974 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals 19 March 1975.

The following appear to be undisputed facts as gathered from the pleadings, affidavits, and exhibits included in the record on appeal.

On 26 March 1970 James and wife conveyed to Vacation Properties, Inc. (Vacation), a Virginia corporation, approximately 500 acres of land in Pasquotank County, North Carolina. The 500 acres contain the 48.672 acres which are involved in this controversy. Vacation executed a note to James and wife for the balance of the purchase price ($135,877.50) and, as security, executed a purchase money deed of trust dated 6 April 1970 conveying the 500 acres, with the exception of the 48.672 acres involved in this controversy.

On 9 June 1970 Vacation borrowed $600,000.00 from United Virginia Bank/Seaboard National and executed a deed of trust dated 9 June 1970 conveying a portion of the 500 acres to secure payment of the note.

On 18 December 1970 Quible & Associates (Quible) filed a claim of lien against the 500 acres for labor and materials furnished from 28 February 1970 to 30 October 1970. On 18 December 1970 Waff Brothers (Waff) filed a claim of lien against the 500 acres for labor and materials furnished from 9 April 1970 to 15 November 1970.

On 30 March 1971 Spencer Berger (Berger) acquired all of the stock of Vacation.

On 26 May 1972 judgment was rendered in Superior Court, Pasquotank County (file No. 71CVS270), in favor of Waff and against Vacation for the sum of $193,987.62, with a lien on the 500 acres effective 9 April 1970. On the same day (26 May 1972) judgment was rendered in Superior Court, Pasquotank County (file No. 71CVS271), in favor of Quible and

against Vacation for the sum of $63,182.91, with a lien on the 500 acres effective 28 February 1970.

In approximately May 1972, by reason of default by Vacation in payment of the purchase money note for the 500 acres, foreclosure proceedings were commenced by the trustee in the purchase money deed of trust. The 500 acres, excepting the 48.672 acres which had been excepted from the deed of trust, were advertised for sale.

By instruments dated 13 July 1972 Berger received from James and wife an assignment of the purchase money note and deed of trust and executed to the Bank of North Carolina, N.A. (Bank), an authorization for it to demand foreclosure of the deed of trust in the event Berger failed to pay his note to Bank for $137,673.53 borrowed to obtain the assignment of the purchase money note and deed of trust. On or about 20 November 1972 Berger paid his personal note to Bank and about the same date executed an instrument naming Frank B. Aycock, Jr. (Aycock), trustee in the place of the original trustee named in the purchase money deed of trust.

Articles of incorporation of Carolina-Albemarle Corporation (Carolina) were executed on 19 April 1973 and filed with the Secretary of State, State of North Carolina, on 25 April 1973. The original incorporators were Berger, Henderson Reeves, Jr., and Aycock.

By deed acknowledged on 25 April 1973 by Berger as president, Vacation conveyed to Carolina the 500 acres of land, including the 48.672 acres which are involved in this controversy. Following foreclosure proceedings on 30 July 1973 by Aycock, substitute trustee, under the original purchase money deed of trust (which had been assigned to Berger), Aycock, substitute trustee, by deed dated 29 August 1973, conveyed the 500 acres, excepting the 48.672 acres which are involved in this controversy, to Carolina. This conveyance by the substitute trustee was upon a high bid by Berger, which bid Berger assigned to Carolina.

On 27 August 1973 United Virginia Bank/Seaboard National assigned its $600,000.00 note from Vacation dated 9 June 1970 and the deed of trust conveying a portion of the 500 acres to secure the note to Bank (defendant Bank of North Carolina, N.A.).

On 28 August 1973 Carolina executed a deed of trust conveying the 500 acres, excepting the 48.672 acres involved in this controversy, to secure its note to Bank for the sum of $500,000.00.

By instruments dated 13 November 1973 Quible assigned its judgment to Carolina, and Carolina assigned the Quible judgment to Bank. By instruments dated 22 October 1973 Bank released to Carolina 27,980 acres of the land described in the 28 August 1973 deed of trust from Carolina to secure its note to Bank. Carolina in turn executed a deed of trust conveying the same 27.980 acres to secure its note for the balance owed Quible for the assignment of the Quible judgment.

In early 1974 Bank caused execution to issue upon the Quible judgment, which it holds under assignment from Carolina, and the sheriff of Pasquotank County advertised the sale under execution to be held on 4 March 1974. Waff instituted this action of 26 February 1974, wherein it seeks (1) to restrain the execution sale under the Quible judgment, (2) to have the Quible judgment declared extinguished by payment, and (3) in the alternative, to require defendant Bank to exhaust its other security before proceeding under the Quible judgment. On 27 February 1974 a temporary restraining order was entered in Superior Court, Pasquotank County, temporarily restraining the execution sale under the Quible judgment. After a hearing on the pleadings, affidavits, and exhibits, Judge Lanier, by order dated 5 November 1974, denied a preliminary injunction and dissolved the temporary restraining order.

Waff gave notice of appeal, and Judge Lanier, on 14 November 1974, restored the temporary restraining order pending appellate disposition of Waff's appeal.

*White, Hall, Mullen & Brumsey, by Gerald F. White and William Brumsey III, for the plaintiff.*

*Ellis, Hooper, Warlick, Waters & Morgan, by John D. Warlick, Jr., and Harold L. Waters, for defendant Bank of North Carolina, N.A.*

*Frank B. Aycock, Jr., for defendants Carolina-Albemarle Corporation, Vacation Properties, Inc., and Spencer Berger.*

BROCK, Chief Judge.

Plaintiff argues that the trial judge committed error in dissolving the temporary restraining order and further committed error in refusing to issue a preliminary injunction pending trial of this action on the merits.

[1]   At a hearing on motion for a preliminary injunction pending the final hearing on the merits *(See* G.S. 1A-1, Rule 65[b]), the burden is on the party seeking the injunctive relief to establish (1) that there is probable cause to believe that the party will ultimately prevail in a final determination of the case, and (2) that irreparable harm will be suffered by the party if the injunctive relief is not granted. A failure to establish either of the two requirements will justify denial of the injunctive relief. *Mason v. Apt., Inc.,* 10 N.C. App. 131, 177 S.E. 2d 733 (1970).

[2]   We are impressed at the outset with the complete failure of a showing by plaintiff that it will be irreparably damaged if injunctive relief is not granted. Plaintiff offered no evidence of the value of the 48.672 acres. Plaintiff has offered no evidence to suggest that the Quible judgment and plaintiff's judgment cannot be satisfied in full by a sale of the 48.672 acres. We are aware that the total of the two judgments is $257,170.53, but that tells us nothing of the value of the property. Plaintiff does not even argue in its brief that a sale of the property would not satisfy both judgments. Maybe a sale will satisfy both, or maybe it will not. The plaintiff's evidence is silent upon the question.

There is some inference from defendants' evidence that the property has been substantially developed for vacation property, that streets have been opened, lots divided, bulkheads constructed on the Albemarle Sound, and some work done on a golf course, tennis courts, and a recreation center. There is also some inference from defendants' evidence that lots were selling for $8,000.00 each and that 65 of the lots within the 48.672 acres were under sales contracts totaling $467,206.50, including interest.

We do not need to decide whether plaintiff has established probable cause to believe that it will prevail in the final determination of this case because the failure to establish the probability of irreparable harm is sufficient to support the denial of injunctive relief.

Plaintiff is joined by defendants in seeking a determination by this Court of the merits of plaintiff's claim that the Quible judgment was extinguished by its assignment to Carolina. The present posture of the case does not permit such a determination. There are no stipulations of fact, and there are no findings of fact by the trial judge or a jury. Whether plaintiff can establish an extinguishment or can establish conduct between Vacation, Berger, Carolina, and Bank that amounts to wrongful conduct *(See Henderson v. Finance Co.,* 273 N.C. 253, 160 S.E. 2d 39 [1968]) is a matter of conjecture at this point. The resolution of these and the other pertinent facts must be left for a trial on the merits.

Although the appellate courts can make their own findings of fact to determine the propriety of temporary injunctive relief, *Coggins v. City of Asheville,* 278 N.C. 428, 180 S.E. 2d 149 (1971); *Realty Corp. v. Kalman,* 272 N.C. 201, 159 S.E. 2d 193 (1967), the resolution of the facts on the merits of the case is the function of the trial court.

Affirmed.

Judges PARKER and ARNOLD concur.