EAST MARKET STREET SQUARE, INC., F/K/A BOGUES/ALSTON DEVELOPMENT CORPORATION, PLAINTIFF v. TYCORP PIZZA IV, INC. AND GILBERT T. BLAND, DEFENDANTS

No. COA05-212

(Filed 7 February 2006)

**1. Corporations— piercing corporate veil—individual's control over corporations—evidence supporting findings**

   In an action involving piercing the corporate veil, competent evidence supported the trial court's findings of fact regarding the extent of defendant Bland's control over the corporations.

**2. Corporations— piercing corporate veil—corporation as instrumentality of individual—equity**

   In an action to pierce the corporate veil, the trial court's findings supported its conclusions that the corporate defendant was the alter ego and mere instrumentality of the individual defend-

ant. The corporate defendant (Tycorp IV) was so dominated by the individual defendant (Bland) that it had no separate mind, will, or existence; the corporation owed an obligation to plaintiffs to pay rent under the lease and to renovate the building, which it failed to do; Bland misrepresented the financial state of his corporations; and, as equity requires placing the burden of the loss on the person responsible, there was no error in holding him responsible.

Appeal by defendant Gilbert Bland from judgment entered 30 June 2004 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 14 November 2005.

*Isaacson Isaacson & Sheridan, LLP, by Jennifer N. Fountain, for plaintiff.*

*Carruthers & Roth, P.A., by Kenneth R. Keller and J. Patrick Haywood, for defendant.*

MARTIN, Chief Judge.

On 19 October 1998, plaintiff East Market Street Square, Inc. ("East Market Street Square"), as landlord, and defendant Tycorp Pizza IV, Inc. ("Tycorp IV"), as tenant, entered into a commercial lease for premises located at 1612 East Market Street in Greensboro, North Carolina. On 18 June 2003, plaintiff filed this action against Tycorp IV and its president, Gilbert T. Bland, alleging claims for breach of the lease and damage to the leased premises. In its complaint, plaintiff sought to pierce the corporate veil of Tycorp IV and hold defendant Bland individually liable for all of the corporate defendant's liabilities to plaintiff.

The matter was tried by the court sitting without a jury. The evidence presented at trial tended to show the following: East Market Street Square is incorporated under the laws of North Carolina and owns commercial property in Greensboro consisting of a five-unit "strip" shopping center and two outparcels. Melvin "Skip" Alston is president of East Market Street Square.

Tycorp Pizza IV, Inc. is incorporated under the laws of Virginia and was formed for the purpose of operating a Pizza Hut restaurant franchise on one of the outparcels owned by plaintiff. Defendant Bland is the president, sole director, and sole shareholder in Tycorp IV. Tycorp IV is a member of the Tycorp family of companies orga-

nized by defendant Bland to own and operate Pizza Hut restaurants in North Carolina and Virginia. At the time of the trial, Tycorp companies owned and operated thirty-six Pizza Hut restaurants. At the top of the corporate structure is Tycorp Pizza, Inc., a holding company that owns all of the stock in three subsidiary corporations: (1) Tycorp Pizza of Virginia, Inc., (Tycorp VA) (2) Tycorp Pizza of North Carolina, Inc. ("Tycorp NC") and (3) Tycorp Pizza III, Inc. ("Tycorp III"). Defendant Bland is the president and sole common shareholder in the holding company. He is also the president, sole director, and sole shareholder in each of the three subsidiary corporations. Bland was the sole shareholder of Tycorp IV until February of 2003, when its shares were sold to Tycorp NC.

Each of the thirty-six restaurants owned by Tycorp companies remits a percentage of its sales to another corporation, Tycorp Group, Inc. ("Tycorp Group"), as a "management fee." Defendant Bland is the president and sole shareholder of Tycorp Group, which has approximately fifteen employees. These employees manage regional groups of restaurants and provide accounting and human resource services. Defendant Bland receives an annual salary from Tycorp Group in exchange for his services. He was compensated in the amount of $200,000 in 2003, and $150,000 in 2001 and 2002.

Defendant Bland first approached Mr. Alston about possibly renting a building from him in May of 1998. Earlier in the year, the building had been vacated by a chicken and seafood restaurant. Following their initial meeting, defendant Bland and Mr. Alston lost contact, and Mr. Alston leased the property to Ms. Gladys Shipman for the purpose of opening a "soul food" restaurant. After the lease between East Market Street Square and Ms. Shipman had been negotiated and signed, defendant Bland contacted Mr. Alston and expressed his continued interest in the property, asserting that a national franchise such as Pizza Hut would be better for the surrounding community than Ms. Shipman's independently-operated restaurant. Defendant Bland also indicated the Pizza Hut he intended to operate on the property had the potential to earn between $700,000 and $800,000 per year, although Mr. Alston believed the earning potential could be between $900,000 and $1,000,000 per year. Ms. Shipman agreed to terminate her lease in exchange for $4,000, to be paid by defendant.

Negotiations then commenced between defendant Bland and Mr. Alston. The two men personally negotiated the terms of the lease then sent it to their attorneys for review. The agreement was signed on 19 October 1998 by Mr. Alston as president of S & J Management

Corporation and defendant as president of Tycorp IV, which had been incorporated earlier the same day. The lease was for a period of ten years, with a minimum monthly base rental in the amount of $4,000. There was also a percentage rent equal to 7% of gross sales for each calendar year. Defendant Tycorp IV accepted the leased premises in its "as is" condition and acknowledged that it had examined and inspected the premises and was familiar with its physical condition. Defendant Tycorp IV further agreed to "open for business and operate one hundred percent (100%) of the Leased Premises during the Term with due diligence and efficiency so as to produce all of the Gross Sales which may be produced by such manner of operation."

It was clear to both parties that the building on the premises would require a massive renovation in order to accommodate a Pizza Hut. East Market Street Square agreed to grant defendant Tycorp IV an allowance of $75,000 for the purpose of renovating the interior and exterior of the building. There was a long list of improvements to be made. The parking lot was in a state of disrepair, a new roof and heating/air conditioning system was required, cooking equipment left over from the chicken restaurant needed to be replaced, and the interior required remodeling to comply with Pizza Hut corporate standards. Furthermore, defendant Tycorp IV intended to expand the size of the building and construct a pick-up window. Tycorp IV solicited bids for the renovations, and received one for $523,000 plus the cost of new kitchen equipment. Defendant was surprised by this high cost. Nevertheless, work proceeded. The building was gutted and defendant removed all furniture and fixtures in the summer of 2002.

In the autumn of 2002, the Tycorp companies began to experience financial difficulties. Tycorp NC, Tycorp VA, and Tycorp III had borrowed significant sums from various lenders in order to finance their purchase of the original thirty-four Pizza Hut restaurants in 1995. In 2002, the companies stopped making payments on these loans and fell into default. In response, the lenders accelerated the loans and demanded payment. Some of the notices of default prohibited the companies "from making any dividends or distributions including salaries, fees and other compensation." Tycorp NC had been paying the rent on the Market Street property for Tycorp IV since the lease was signed in October of 1998. Therefore, in February of 2003, rent payments ceased on the Market Street property. Defendant Bland testified that this was due to the acceleration of Tycorp's loans, and that there was a "very clear understanding that [Tycorp's] dollars were to be expended only in ways that would repay their loans."

Throughout this time, the gutted building stood dormant. In the summer of 2003, it caught the attention of the City of Greensboro Inspection Department. Inspectors condemned the building and ordered plaintiff to repair or demolish it due to the following conditions: (1) gutted and abandoned building shell, (2) broken windows, (3) deteriorated roof structure, (4) vegetative overgrowth of roof and gutters, and (5) lack of operable electrical, mechanical, or plumbing services. The building was eventually demolished at plaintiff's expense.

The trial court awarded damages to plaintiff for breach of the lease and property damages in the amount of $115,500 plus costs and interest. The trial court also pierced the corporate veil of Tycorp IV and held defendant Bland individually liable for the damages awarded plaintiff. Defendant Bland appeals.

---

Defendant Bland's sole argument on appeal is that the trial court erred in holding him individually liable for the acts and obligations of the corporate defendant Tycorp IV. In support of this argument, defendant Bland contends that (1) he did not exercise the control over Tycorp IV required to support an action to pierce the corporate veil, (2) if such control is found, it was not used to commit a tort or any unjust act, (3) no action by him was the proximate cause of injury to plaintiff, and (4) the lease was an arm's length transaction negotiated between two corporations and their respective attorneys, therefore equity does not require piercing the corporate veil.

The standard of review on appeal from a non-jury trial is "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). Where the trial court sits without a jury, its findings of fact "have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings." *Id.* However, we review the trial court's conclusions of law *de novo. Id.*

"It is well recognized that courts will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity." *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). North Carolina courts use the "instrumentality rule" to determine whether to disre-

gard the corporate entity and hold parent or affiliated corporations or shareholders liable for the acts of a corporation. *Id.* The instrumentality rule may be stated as follows:

> "[if] the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation.

*Henderson v. Finance Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968) (emphasis in original). There are three elements necessary to pierce the corporate veil under the instrumentality rule:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn*, 313 N.C. at 455, 329 S.E.2d at 330 (internal citation omitted).

[1] Defendant Bland first argues he did not exercise sufficient control over Tycorp IV to support an action to pierce the corporate veil. The trial court made the following findings of fact regarding defendant Bland's control over Tycorp IV and the other Tycorp companies:

17. Defendant Bland was the sole shareholder of Defendant Tycorp Pizza IV, Inc. and had total autonomy and control of Defendant Tycorp Pizza IV, Inc.

18. Defendant Bland controlled, completely dominated and had total autonomy of Tycorp Pizza IV, Inc., so that it had no independent identity and no separate mind, will or existence of its own.

19. Defendant Bland controlled and had total autonomy of his other corporations as well, including Tycorp Pizza, Inc.,

Tycorp Pizza of N.C., Inc., Tycorp Pizza of Virginia, Inc. and Tycorp Pizza III, Inc.

20. Defendant Bland exerted complete domination over Defendant Tycorp Pizza IV, Inc.'s policies, finances and business practices.

21. As Defendant Bland was the sole shareholder, sole director and President of Defendant Tycorp Pizza IV, Inc. and Tycorp Pizza of N.C., Inc., Defendant Bland made all the decisions for Defendant Tycorp Pizza IV, Inc. and Tycorp Pizza of N.C., Inc. and his other corporations.

22. There was no Board of Directors for Defendant Tycorp Pizza IV, Inc. to oversee Defendant Bland's decisions.

23. The only individual to answer to in transactions of business on behalf of Tycorp Pizza IV, Inc. was Defendant Gilbert Bland.

24. Defendant Tycorp Pizza IV, Inc. had no assets except for an undocumented loan from Tycorp Pizza of N.C., Inc. and had no business operation of any kind.

We must determine whether these findings of fact are supported by competent evidence in the record.

Defendant Bland testified at trial that he controlled Tycorp IV in that he made all decisions regarding its finances, policies, and business practices. He also testified he was Tycorp IV's sole director, sole shareholder, president and sole officer. This testimony constitutes competent evidence to support Finding Nos. 17, 18, and 20 that Bland was the "sole shareholder" of Tycorp IV, that he had "total autonomy over Tycorp Pizza IV, Inc. so that it had no independent identity and no separate mind, will or existence of its own," and that he "exerted complete domination over Defendant Tycorp Pizza IV, Inc.'s policies, finances and business practices."

Bland also testified that he was responsible for all contracts made by Tycorp IV except those made by Pizza Hut for its franchises, he managed the details of the lease negotiations for Tycorp IV rather than his attorneys, he interacted with Pizza Hut representatives when considering opening a franchise, and he signed the application for a certificate of authority to transact business in North Carolina on behalf of Tycorp IV. Melvin Alston, president of plaintiff, testified that all of his interactions regarding the lease negotiation were with

EAST MKT. ST. SQUARE, INC. v. TYCORP PIZZA IV, INC.

[175 N.C. App. 628 (2006)]

defendant Bland. He never heard of Tycorp IV during these negotiations; he only became aware of its existence upon receiving the first rent check under the lease. Defendant Bland presented no evidence of a Board of Directors to oversee his decisions. Therefore, there was also competent evidence to support Finding Nos. 22 and 23 that "[t]he only individual to answer to in transactions of business on behalf of Tycorp Pizza IV, Inc. was Defendant Gilbert Bland," and that "[t]here was no Board of Directors for Defendant Tycorp Pizza IV, Inc. to oversee Defendant Bland's decisions."

In Finding Nos. 19 and 21, the trial court found Bland "controlled and had total autonomy of" Tycorp Pizza, Inc., Tycorp NC, Tycorp Pizza of Virginia, and Tycorp Pizza III, Inc., and as president, director, and sole shareholder of these companies, Bland made all business decisions for them. Bland testified he was president, director, and sole common shareholder of these companies as well as Tycorp Group Inc., the management company for all the Tycorp corporations. Bland stated he "continually review[s] information with [the] staff all the time. . . . [and] as sole shareholder, digest[s] that information and make[s] decisions." He specifically claimed to have "the authority for the final decisions" of Tycorp NC. Defendants presented no evidence of any other individual or entity with the authority to conduct the business of the Tycorp group of companies. We therefore conclude competent evidence existed to support Finding Nos. 19 and 21 of the trial court.

Finally, Finding No. 24 states that "Defendant Tycorp Pizza IV, Inc. had no assets except for an undocumented loan from Tycorp Pizza of N.C., Inc. and had no business operation of any kind." Defendant Bland testified that Tycorp IV owned no real or personal property. When asked if Tycorp IV ever had any assets, he stated it "had a fair amount of cash that was being advanced to it from Tycorp Pizza of North Carolina." According to Bland, Tycorp NC made lease payments for Tycorp IV for over four years, totaling $232,622.91. Tycorp NC also paid architectural fees and renovation costs. However, Tycorp NC had lost money every year since its inception. Tycorp NC was funded by bank loans and profits made by Tycorp Pizza of Virginia, Inc. because the earnings from all thirty-six of defendant's restaurants went "into a single pot."

Defendant argues in his brief that in addition to the financing from Tycorp NC, Tycorp IV also had the following assets: a commitment from the landlord under the lease to provide a $75,000 construction allowance, $200,000 worth of restaurant equipment, a sub-

scription agreement for $1,000, and authorization from Pizza Hut to open and operate a Pizza Hut restaurant on the premises. However, these assets, in addition to advancements from a failing corporation, were insufficient to allow defendants to conduct the necessary renovations to the leased premises and to open and operate a restaurant thereon. Furthermore, Finding No. 24 states that Tycorp IV "had no business operation of any kind." Bland testified Tycorp IV "never had any operations" and "was formed to simply hold this one lease." While the trial court's statement that Tycorp IV had "no assets except for an undocumented loan from Tycorp Pizza of N.C., Inc." may have been technically incorrect, the evidence in the record does support a finding that these assets were insufficient under the circumstances to support the operation of defendants' restaurant and that Tycorp IV "had no business operation of any kind."

We conclude, based on the evidence before us, that the trial court's findings of fact regarding the extent of Bland's control over Tycorp IV and the other Tycorp companies were supported by competent evidence. We must now ask whether these findings of fact support the trial court's conclusions of law that Tycorp IV was the alter ego and mere instrumentality of the individual defendant Bland.

[2] We have previously considered the following factors in determining the level of control a corporate or individual defendant exercises over a corporation:

1. Inadequate capitalization ("thin incorporation").

2. Non-compliance with corporate formalities.

3. Complete domination and control of the corporation so that it has no independent identity.

4. Excessive fragmentation of a single enterprise into separate corporations.

*Glenn*, 313 N.C. at 455, 329 S.E.2d at 330-31 (internal citations omitted). However, it "is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which . . . suggest that the corporate entity attacked had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of the dominant corporation." *Id.* at 458, 329 S.E.2d at 332.

The trial court made the following conclusions of law regarding defendant Bland's control over Tycorp IV:

3. Defendant Tycorp Pizza IV, Inc. was inadequately capitalized.

4. Defendant Bland commingled the funds from his 36 restaurants between his corporations including Defendant Tycorp Pizza IV, Inc. and Tycorp Pizza of N.C., Inc.

5. Defendant Bland exercised complete domination and control over Tycorp Pizza IV, Inc. so that it had no independent identity and no separate mind, will or existence of its own.

6. Defendant Bland excessively fragmented his pizza restaurant enterprise into separate corporations.

7. Defendant Bland and Defendant Tycorp Pizza IV, Inc. are one and the same.

8. Defendant Tycorp Pizza IV, Inc. is the alter ego of Defendant Bland.

9. Defendant Tycorp Pizza IV, Inc. is a mere instrumentality of Defendant Bland.

These conclusions were properly drawn from the trial court's findings indicating that Tycorp IV was a shell corporation intended to shield defendant Bland and his other corporations from liability. Defendant Bland alone conducted all negotiations and made all decisions for Tycorp IV. He failed to capitalize the corporation sufficiently for it to open a Pizza Hut on the leased premises. Tycorp IV's most significant asset was the money it received from Tycorp NC, another of Bland's corporations. Indeed, Bland testified that the money from all of the Tycorp corporations went "into a single pot," that he used profits from one corporation to operate others, that he considered his corporations "as a group" rather than "separate," and that the corporations sometimes guaranteed one another's loans. However, instead of entering into the lease in question through Tycorp NC, an existing corporation operating restaurants in the immediate area, Bland created Tycorp IV solely for this particular transaction. As in *Glenn*, 313 N.C. at 459, 329 S.E.2d at 333, "the two corporations . . . functioned as a single business enterprise in substance, if not in form." In that case, our Supreme Court held the parent corporation liable for the actions of its subsidiary.

Because Bland was president, sole director, and sole shareholder of the entire hierarchy of Tycorp corporations, his creation of Tycorp IV in this instance appears unnecessary and redundant. Although we recognize that "[t]he mere fact that one person . . . owns all of the

stock of a corporation does not make its acts the acts of the stockholder so as to impose liability therefor upon him," *Henderson*, 273 N.C. at 260, 160 S.E.2d at 44; *see also* N.C. Gen. Stat. § 55-2-03(c) (2005), we agree with the trial court's conclusion that in this case, Tycorp IV was so dominated by Bland that it had no "separate mind, will or existence of its own" other than as a "mere instrumentality or tool" of Bland himself. *Glenn*, 313 N.C. at 458, 329 S.E.2d at 332.

The second element necessary to pierce the corporate veil is that a defendant must use his control of the corporation "to commit fraud or wrong" such as "the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights." *Id.* at 455, 329 S.E.2d at 330. Defendant argues his "mere breach of a contractual obligation" does not constitute an unjust act as contemplated by the Court in *Glenn*. According to defendant, North Carolina law requires a "heightened wrongful act," such as a tort or the violation of a statute, to pierce the corporate veil. However, we find defendant's argument to be without merit for two reasons. First, we consider performance under a contract to be a "positive legal duty," the violation of which constitutes a clear "wrong" done to plaintiffs. Our Supreme Court in *Glenn* defined piercing the corporate veil as "extend[ing] liability for corporate *obligations* beyond the confines of a corporation's separate entity." *Id.* at 454, 329 S.E.2d at 330 (emphasis added). It is undisputed that Tycorp IV owed an obligation to plaintiffs to pay rent under the lease and to renovate the building, which it failed to do.

The trial court also made the following conclusions of law regarding defendant Bland's use of his control of the corporation:

12. Defendant Bland has used his complete domination and control of Defendant Tycorp Pizza IV, Inc. and Tycorp Pizza of N.C., Inc. to commit a fraud, wrong and dishonest and unjust act in contravention of Plaintiff's legal rights.

13. The damage to the Premises by Defendants is one of the wrongs and unjust acts which Defendants inflicted upon Plaintiff.

14. The wrongs done unto Plaintiff include the damage to the building on the Premises, the control of Defendant Tycorp Pizza IV, Inc. and Tycorp Pizza of N.C., Inc. which caused the failure to pay rent and the dishonesty regarding the solvency of Defendant Tycorp Pizza IV, Inc. at the time the Lease was entered into.

15. Also, Defendant Bland used his control over Tycorp Pizza IV, Inc., Tycorp Pizza of N.C., Inc. and his other corporations to perpetrate a wrong upon the Plaintiff when he engaged in business, specifically with Plaintiff and this wrong caused injury and loss to Plaintiff.

16. A dishonest and unjust act was committed by Defendants upon Plaintiff when Defendant Bland represented himself and Defendant Tycorp Pizza IV, Inc. as a solvent individual and a solvent corporation when Defendant Tycorp Pizza IV, Inc. and Defendant Bland's other corporations, including Tycorp Pizza of N.C., Inc. were struggling financially when Defendant Bland entered into the lease with Plaintiff on behalf of Defendant Tycorp Pizza IV, Inc.

These conclusions of law were supported by the trial court's findings of fact, including its findings that (1) defendant Bland represented both he and Tycorp IV as solvent, (2) Bland continually promised plaintiff he would open a Pizza Hut on the leased premises but failed to do so, and (3) defendants removed and destroyed fixtures in the building, rendering the building worthless and resulting in its eventual demolition. These findings, which are supported by competent record evidence, and the subsequent conclusions of law indicate defendant Bland misrepresented the financial state of his corporations, resulting in the loss of plaintiff's building and the fixtures therein. This misrepresentation, in addition to the breach of contract, satisfies the second element necessary to pierce the corporate veil. We hold, therefore, the trial court properly concluded defendant Bland "used his complete domination and control of Defendant Tycorp Pizza IV, Inc. and Tycorp Pizza of N.C., Inc. to commit a fraud, wrong and dishonest and unjust act in contravention of Plaintiff's legal rights."

The third and final element required for piercing the corporate veil is that the defendant's "control and breach of duty must proximately cause the injury or unjust loss complained of." *Id.* at 455, 329 S.E.2d at 330. Defendant Bland argues the trial court erred in concluding that his "control and complete domination of Defendant Tycorp Pizza IV, Inc. and Tycorp Pizza of N.C., Inc. was the proximate cause of the injury and unjust loss suffered by Plaintiff." However, Tycorp IV's failure to perform under the contract resulted in plaintiff's loss of rental income as well as its loss of the building on its premises. After gutting the building, defendant was unable to pay for the necessary renovations and was forced to leave it dormant, result-

ing in its eventual demolition. The trial court found that "[a]lthough the Lease allowed for destruction of the building on the Premises, this was only contemplated if Defendants were to proceed with construction of a facility to operate a Pizza Hut." Defendant does not contest the trial court's finding in this respect, but simply argues that its lenders' acceleration of its loans caused the breach of lease rather than any action by defendant Bland. However, Bland's complete domination and exclusive control of the Tycorp companies' business decisions ultimately resulted in the acceleration of these loans. This argument is overruled.

Finally, defendant argues the lease in this case was an arm's length transaction negotiated between two corporations and their respective attorneys, therefore equity does not require piercing the corporate veil. "[T]he theory of liability under the instrumentality rule is an equitable doctrine. Its purpose is to place the burden of the loss upon the party who should be responsible. Focus is upon reality, not form, upon the operation of the corporation, and upon the defendant's relationship to that operation." *Id.* at 458, 329 S.E.2d at 332. Equity, therefore, requires placing "the burden of the loss" on the party responsible for the breach of contract. We have already found defendant Bland so dominated Tycorp IV as to make the individual and the corporation "alter egos." As such, the individual defendant was equally responsible for the plaintiff's loss, and we see no error in the trial court's decision to hold him personally liable for the breach of the lease.

Affirmed.

Judges McGEE and ELMORE concur.