**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PAMELA J. FAIRCLOTH, on behalf of
herself and all others similarly
situated,

              *Plaintiff-Appellant,*

        v.

FINANCIAL ASSET SECURITIES
CORPORATION MEGO MORTGAGE
HOMEOWNER LOAN TRUST; THE MEGO
MORTGAGE HOME LOAN OWNER
TRUST 1997-2; FINANCIAL ASSET
SECURITIES MEGO MORTGAGE HOME
OWNER LOAN TRUST 1997-3;
FINANCIAL ASSET SECURITIES
CORPORATION MEGO MORTGAGE
HOME LOAN OWNER TRUST 1997-4;
UBS WARBURG REAL ESTATE
SECURITIES, INCORPORATED, formerly
known as Paine Webber Real Estate
Securities, Incorporated; PSB
LENDING CORPORATION; INDYMAC
MORTGAGE HOLDINGS, formerly
known as INMC Mortgage
Corporation; PALADIAN FINANCIAL,
INCORPORATED; UNITED STATES BANK
NATIONAL ASSOCIATION; UNITED
STATES BANK NATIONAL ASSOCIATION,
ND; FIRSTPLUS HOME LOAN OWNER
TRUST 1996-2; FIRSTPLUS HOME
LOAN OWNER TRUST 1996-3;
FIRSTPLUS HOME LOAN OWNER

              No. 03-1473

TRUST 1996-4; FIRSTPLUS HOME
LOAN OWNER TRUST 1997-1;
FIRSTPLUS HOME LOAN OWNER TRUST
1997-2; FIRSTPLUS HOME LOAN
OWNER TRUST SERIES 1997-3;
FIRSTPLUS HOME LOAN OWNER TRUST
SERIES 1997-4; FIRSTPLUS HOME
LOAN OWNER TRUST 1998-1;
FIRSTPLUS HOME LOAN OWNER TRUST
1998-2; FIRSTPLUS HOME LOAN
OWNER TRUST 1998-3; FIRSTPLUS
HOME LOAN OWNER TRUST 1998-4;
FIRSTPLUS HOME LOAN OWNER TRUST
1998-5 GERMAN AMERICAN CAPITAL
CORPORATION; ACE SECURITIES
CORPORATE HOME LOAN TRUST 1999
A; REAL TIME RESOLUTIONS,
INCORPORATED; GRMT MORTGAGE
LOAN TRUST 2001-1; SOVEREIGN
BANK,

*Defendants-Appellees,*

and

NATIONAL HOME LOAN CORPORATION,
*Defendant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CA-01-1140)

Argued: December 4, 2003

Decided: January 23, 2004

Before WILLIAMS, MOTZ, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Kevin L. Oufnac, RICHARDSON, PATRICK, WEST-BROOK & BRICKMAN, L.L.C., Mt. Pleasant, South Carolina, for Appellant. Hada deVarona Haulsee, WOMBLE, CARLYLE, SANDRIDGE & RICE, Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Gary K. Shipman, William G. Wright, SHIPMAN & ASSOCIATES, L.L.P., Wilmington, North Carolina, for Appellant. Ronald R. Davis, WOMBLE, CARLYLE, SANDRIDGE & RICE, Winston-Salem, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In this case, Pamela J. Faircloth appeals from the dismissal of her putative class action against various financial institutions, wherein she alleged that these institutions violated North Carolina's usury and deceptive trade practices laws. The district court concluded that Faircloth lacked standing to sue all but two of the defendants, and found her claims against these two defendants to be time-barred. For the reasons that follow, we affirm.

I.

During the late 1990s, National Home Loan Corporation (National) was in the business of providing individuals with loans secured by second mortgages on real property. On July 8, 1997, Faircloth obtained such a loan from National, secured by a second mortgage on her residence. The principal amount of the loan was $26,450.00 with

an interest rate of 13.99% over a term of 300 months. The disclosed Annual Percentage Rate of the loan was 15.952%. At loan closing, National charged Faircloth $3,284.50 in fees and costs. Shortly after closing, and apparently consistent with its general practice, National sold the note from Faircloth to another financial institution. The current holder of Faircloth's note is Financial Asset Securities Corporation Mego Mortgage Home Owner Loan Trust, Series 1997-4 (Mego Trust 1997-4).

On November 26, 2001, over four years after the closing of her loan from National, Faircloth, on behalf of herself and all others in North Carolina who obtained similar loans from National, filed suit in North Carolina state court. Faircloth sued a total of 29 financial institutions that, for ease of discussion, fall into three general categories: (1) National, the originator of all loans; (2) Mego Trust 1997-4, the current holder of Faircloth's note; and (3) the remaining defendants (hereinafter referred to as the non-holder trusts). The non-holder trusts are the entities that Faircloth alleged are the holders of the notes of the other members of the putative class as a result of National's sale of those loans. Faircloth alleged that each of the 29 defendants is liable under North Carolina law for National's conduct in selling the original loans. Specifically, Faircloth alleged that National violated the North Carolina usury laws, *see* N.C. Gen. Stat. §§ 24-1.1, 24-10, 24-12, and 24-14 (2002), by imposing interest rates and fees in excess of amounts allowed by statute. Faircloth also alleged that National violated the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), *see* N.C. Gen. Stat. § 75-1.1 (2002), by engaging in unfair and deceptive marketing practices and by charging usurious costs and fees. Mego Trust 1997-4 and the non-holder trusts, Faircloth alleged, were liable for the acts of National as holders of the notes securing the class members' respective mortgages. In accordance with North Carolina procedural rules, Faircloth did not specify the exact amount she sought to recover in damages, but did "stipulate" that no class member would seek damages in excess of $75,000.

The defendants removed the action to the United States District Court for the Middle District of North Carolina on December 31, 2001 on the basis of diversity jurisdiction. The defendants, none of which are North Carolina residents, believed that Faircloth's individual claims, if successful, would result in recovery in excess of

$75,000. Shortly thereafter, Faircloth filed a motion to remand, and the defendants filed motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Each of the defendants asserted that Faircloth had failed to state a claim upon which relief could be granted. Two of the defendants challenged Faircloth's standing to sue the non-holder trusts because those entities had no relationship to Faircloth's note. On July 25, 2002, before the district court had disposed of the motion to remand and motions to dismiss, Faircloth filed an amended complaint that was substantially similar to the original complaint, but differed in that it omitted any allegation that the interest rate charged on Faircloth's loan violated the state usury laws.

In a March 17, 2003, Memorandum Opinion, the district court denied the motion to remand and granted the motions to dismiss. *See Faircloth v. Nat'l Home Loan Corp.*, No. 1:01CV1140, 2003 WL 1232825, *2 (M.D.N.C.). (J.A. at 191.) Respecting the motion to remand, the district court found that, if Faircloth were to prevail on her individual claims in the original complaint, Faircloth would recover in excess of $75,000, notwithstanding her "stipulation" to the contrary. Finding the amount in controversy and diversity of citizenship requirements satisfied, the district court concluded that it had diversity jurisdiction over Faircloth's claim and supplemental jurisdiction over the claims of the class members. With regard to the motions to dismiss, the district court held first that Faircloth lacked standing to assert any claims against the non-holder trusts, notwithstanding the fact that she sought to represent claimants whose loans actually might be held by the non-holder trusts. In so holding, the district court rejected Faircloth's argument that she had standing to sue these defendants either under the so-called "juridical link doctrine," or through the Home Ownership and Equity Protection Act of 1994 (HOEPA), *see* 15 U.S.C.A. §§ 1602(aa), 1639, and 1641(d) (West 1998). As to National and Mego Trust 1997-4, the district court concluded that both Faircloth's usury claim and her UDTPA claim were time-barred by the applicable statutes of limitations. Faircloth timely appealed, challenging the district court's holdings respecting both the motion to remand and the motions to dismiss. Prior to oral argument, Faircloth moved successfully to dismiss National as a defendant-appellee and withdrew her challenge to the district court's denial of

her motion for remand.[1] Therefore, the only remaining issue is whether the district court erred in dismissing Faircloth's claims.

## II.

### A.

Before turning to the district court's dismissal of the claims that Faircloth asserts on behalf of herself, we first must consider briefly whether she has standing to assert claims on behalf of her class members against parties who have caused Faircloth no cognizable injury. Ordinarily, our rules of standing prohibit plaintiffs from asserting claims of third parties. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). Faircloth argues that these requirements do not prevent her from asserting claims against the non-holder trusts on behalf of the putative class members, either as a result of HOEPA, or because of the so-called "juridical link" doctrine. Neither of these theories is availing in this case.

Respecting HOEPA, the district court correctly rejected Faircloth's novel argument that this statute somehow creates third-party standing in this context. *See Faircloth v. Nat'l Home Loan Corp.*, No. 1:01CV1140, 2003 WL 1232825, *2 (M.D.N.C.) (J.A. at 199-201) (incorporating by reference portions of its opinion in *Dash v. First-*

---

[1]Faircloth had challenged whether the district court applied the appropriate standard of proof in making its factual finding regarding the amount in controversy. Faircloth contended that the district court should have required the defendants to prove to a "legal certainty" that the amount in controversy exceeded $75,000, rather than applying the less stringent preponderance-of-the-evidence standard. Although Faircloth now effectively has conceded that, if she were to succeed on the claims in her original complaint, she would recover in excess of $75,000, we must be satisfied independently that the exercise of jurisdiction is appropriate. Because, regardless of the standard of proof, we find no clear error in the district court's factual finding that the amount-in-controversy of Faircloth's usury claim exceeds $75,000, we are satisfied that the amount in controversy threshold has been met and that the exercise of jurisdiction is appropriate under 28 U.S.C.A. §§ 1332 and 1367 (West 1993 & Supp. 2003). *See Rosmer v. Pfizer*, 263 F.3d 110, 114 (4th Cir. 2001).

*plus Home Loan Trust 1996-2*, 248 F. Supp. 2d 489, 506 (M.D.N.C. 2003), a case virtually identical to this one). HOEPA, under some circumstances, makes the assignees of mortgage loans liable for harms committed by the loan originator, *see* 15 U.S.C.A. § 1641(d), but does not grant plaintiffs like Faircloth the right to assert the claims of others. In fact, HOEPA does not speak to the question of standing at all.

The "juridical link" doctrine, in contrast, might allow for third-party standing under the proper circumstances. *See Payton v. County of Kane*, 308 F.3d 673, 677-82 (7th Cir. 2002) (describing the juridical link doctrine and explaining its consistency with traditional standing rules); *see generally* 5 James Wm. Moore, et al., Moore's Federal Practice ¶ 23.24[7][b] (3d ed. 2003). Under that doctrine, which we have yet to recognize in this circuit, the representative of a properly certified class may sue defendants against whom the representative has no direct claim. Those defendants, however, must be linked by way of some "conspiracy or concerted scheme" with a defendant against whom the representative *does* have a direct claim. *Payton*, 308 F.3d at 678-79. This doctrine is premised on the notion that the class, not the class representative, is the relevant legal entity for the purpose of Article III justiciability considerations. *Id.* at 679. Because no class has been certified and because, for the reasons discussed below, Faircloth's direct claims must be dismissed, she can never be the representative of a properly certified class. Fed. R. Civ. P. 23(a)(3), (4). Therefore, even were we to recognize the juridical link doctrine as a basis for standing, Faircloth could not invoke it successfully. Without the prospect of class certification, Faircloth's claims against the non-holder trusts are nothing more than attempts to assert the injuries of others and therefore must be dismissed for lack of standing. *See Warth*, 422 U.S. at 499.

## B.

We turn next to the district court's dismissal of Faircloth's direct claims against Mego Trust 1997-4 under Rule 12(b)(6).[2] We review dismissals under Rule 12(b)(6) de novo, accepting the factual allega-

---

[2]As noted above, Faircloth successfully moved to dismiss National as a defendant-appellee.

tions in the complaint as true. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991).

1.

Under North Carolina law, any "action to recover the penalty for usury" must be commenced within two years of the accrual of the action. N.C. Gen. Stat. § 1-53(2) (2002). Claims seeking the double recovery remedy under N.C. Gen. Stat. § 24-2 for violations of N.C. Gen. Stat. § 24-10(e), the provision outlawing usurious fees, qualify as actions seeking to recover the "penalty for usury." *Swindell v. Fed. Nat'l Mortgage Ass'n*, 409 S.E.2d 892, 895 (N.C. 1991). Such actions accrue on the date of payment. *See Haanebrink v. Meyer*, 267 S.E.2d 598, 599 (N.C. 1980) (citing *Henderson v. Finance Co.*, 160 S.E.2d 39 (N.C. 1968). Thus, Faircloth was obligated to file her usurious fees claim within two years of the date on which those fees were paid.

Faircloth agrees that her usurious fees claim is subject to a two-year statute of limitations, but disputes the district court's conclusion that the cause of action accrued on July 8, 1997, the closing date for Faircloth's loan and the date on which National ostensibly collected its fees. Because she rolled her fees into the underlying loan itself, Faircloth argues, her "payment" of fees is indistinguishable from the payment of interest, and therefore the accrual rule that applies for usury claims based on excessive interest should apply. Under that rule, a fresh cause of action accrues each time the plaintiff makes a payment on the underlying loan. *Henderson v. Sec. Mortgage & Fin. Co.*, 160 S.E.2d 39, 47 (N.C. 1968).

Faircloth's argument fails for two distinct reasons. As an initial matter, Faircloth did not allege, either in her original complaint or in her amended complaint, that she paid the fees with loan proceeds. Although we are required to grant Faircloth the benefit of all reasonable inferences, we are not required to assume that Faircloth can prove facts that she has not alleged. *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Stated differently, because Faircloth relies on the fact that her loan included the cost of her fees to overcome the statute of limitations, she was obliged to allege that fact in her complaint.

But even were we to indulge Faircloth's unalleged assertion, the result would be the same. Fees of the type that Faircloth paid here are simply not analogous to interest, even when they are rolled into the underlying loan. Whereas the obligation to pay interest is discharged over the course of the loan repayment period in accordance with the terms of the lending agreement, the obligation to pay closing costs is fully discharged at closing. Therefore, the fees were "paid," albeit with loan proceeds, at the date of closing. Because Faircloth failed to initiate this action until November 26, 2001, more than four years after the closing date, her usury claim against Mego Trust 1997-4 is barred by the two-year statute of limitations.

2.

Faircloth's UDTPA claim against Mego Trust 1997-4 is time-barred as well. Claims under the UDTPA are subject to a four-year statute of limitations, *see* N.C. Gen. Stat. § 75-16.2, and accrue when the alleged violation occurs, *see Jones v. Asheville Radiological Group, P.A.*, 518 S.E.2d 528, 533 (N.C. Ct. App. 1999) (citing *Hinson v. United Fin. Serv.*, 473 S.E.2d 382, 387 (N.C. 1994)), *rev'd in part on other grounds*, 524 S.E.2d 804 (N.C. 2000). Because Faircloth's claim is based on allegedly fraudulent conduct, the violation "occurs at the time the fraud is discovered or *should have been discovered* with the exercise of reasonable diligence." *Nash v. Motorola Com. & Elec., Inc.*, 385 S.E.2d 537, 538 (N.C. Ct. App. 1989) (emphasis in original). The question of when a plaintiff "should have discovered" the fraud is typically a question of fact, but this question may be determined as a matter of law where the plaintiff clearly had both the capacity and opportunity to discover the fraud. *Grubb Prop., Inc. v. Simms Inv. Co.*, 400 S.E.2d 85, 88 (N.C. Ct. App. 1991) (citing *Moore v. Fid. and Cas. Co. of N.Y.*, 177 S.E. 406 (N.C. 1934)).

Faircloth had both the capacity and the opportunity to discover the alleged wrongdoing at the time of closing. In essence, Faircloth alleges that National (and through assignment, Mego Trust 1997-4), violated the UDTPA by the manner in which it marketed its loans, by failing to disclose that it was charging fees in excess of the amount allowed by law, and by charging Faircloth fees for expenses that National did not, in fact, incur. Faircloth does not allege that National failed to disclose the terms of the loan, including the amount of fees

it was charging, or that it actively concealed from Faircloth the fact that it was charging fees. Therefore, the facts necessary for Faircloth to discover that a violation had occurred were patent at the time of closing — she knew the terms of the loan and could determine, without discovering any additional facts, whether they were consistent both with applicable law and with National's marketing representations. Given the nature of Faircloth's allegations, we are obliged to conclude that she had both the capacity and opportunity to discover the alleged harm on July 8, 1997, and her UDTPA claim accordingly accrued on that date. Because Faircloth did not file the present action until November 26, 2001, she failed to comply with the four-year statute of limitations.

## III.

For the foregoing reasons, we conclude that the district court properly dismissed Faircloth's claims under Rules 12(b)(1) and 12(b)(6).

*AFFIRMED*