Clark v. Alan Vester Auto Group, Inc., 2009 NCBC 17.

STATE OF NORTH CAROLINA

COUNTY OF VANCE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
06 CVS 141

JOHN CLARK and MARY CARMON, )
Individually and on Behalf of )
a Class of All Those Similarly Situated, )
                      Plaintiffs )
  )
               v. )
  )
ALAN VESTER AUTO GROUP, INC., d/b/a )
ALAN VESTER AUTO SALES, d/b/a ALAN )
VESTER AUTO OUTLET OF ROXBORO, )
d/b/a ALAN VESTER MITSUBISHI, and )
d/b/a ALAN VESTER AUTO MART OF )
KINSTON, INC.; ALAN VESTER MOTOR )
COMPANY, INC., d/b/a ALAN VESTER )
HONDA; ALAN VESTER NISSAN, INC., )
d/b/a ALAN VESTER AUTOMOTIVE OF )
GREENVILLE; ALAN VESTER AUTO )
MART, INC.; ALAN VESTER FORD )
LINCOLN MERCURY, INC., d/b/a ALAN )
VESTER AUTO OUTLET; ALAN VESTER )
AUTO MART OF KINSTON, INC.; ALAN )
VESTER MANAGEMENT CORPORATION; )
ALAN VESTER ENTERPRISES, LLC, d/b/a )
ALAN VESTER AUTO MART OF SELMA; )
UNIVERSAL UNDERWRITERS )
INSURANCE COMPANY AND WESTERN )
SURETY COMPANY, )
                    Defendants )

**ORDER ON CLASS
CERTIFICATION**

This Vance County civil action was designated exceptional and assigned to the

undersigned by Order of the Chief Justice of the North Carolina Supreme Court,

pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District

Courts.  It is before the court, among other things, for determination of Plaintiffs' Motion

for Class Certification pursuant to Rule 23, North Carolina Rules of Civil Procedure

("Rule(s)"), filed August 18, 2008 (the "Motion"). For the reasons stated in this Order, the court concludes that the Motion should be GRANTED in part and DENIED in part.

> *Wallace and Graham, PA by Mona Lisa Wallace, Esq.; John Hughes, Esq. and Mike Pross, Esq.; Lyons & Farrar, PA by Douglas S. Lyons, Esq.; and Hopper, Hicks & Wrenn, LLP by James C. Wrenn, Esq. for Plaintiffs John Clark and Mary Carmon, individually and on behalf of a class of all those similarly situated.*

> *Teague, Rotenstreich, Stanaland, Fox & Holt, PLLC by Kenneth Rotenstreich, Esq.; Lyn K. Broom, Esq. and Paul A. Daniels, Esq. for Defendants Alan Vester Auto Group, Inc. d/b/a Alan Vester Auto Sales, d/b/a Alan Vester Auto Outlet of Roxboro, d/b/a Alan Vester Mitsubishi, and d/b/a Alan Vester Auto Mart of Kinston, Inc.; Alan Vester Motor Company, Inc., d/b/a Alan Vester Honda; Alan Vester Nissan, Inc., d/b/a Alan Vester Automotive of Greenville; Alan Vester Auto Mart, Inc.; Alan Vester Ford Lincoln Mercury, Inc., d/b/a/ Alan Vester Auto Outlet; Alan Vester Auto Mart of Kinston, Inc.; Alan Vester Management Corporation; Alan Vester Enterprises, LLC, d/b/a Alan Vester Auto Mart of Selma; Universal Underwriters Insurance Company and Western Surety Company.*

Jolly, Judge.

THE COURT, having considered the Motion, the submissions and briefs of the parties in support of and opposition to the Motion, arguments of counsel, appropriate matters of record and the ends of justice, FINDS and CONCLUDES, only for the purposes of the Motion, that:

I.

PROCEDURAL BACKGROUND

[1]     On February 7, 2006, Plaintiffs John Clark ("Clark") and Servietta Hameed ("Hameed") filed their Complaint on behalf of themselves and all others similarly situated.

[2]     On April 7, 2006, Plaintiffs filed a First Amended Complaint.

[3]     On August 29, 2006, by order of the court, Plaintiffs' Second Amended Complaint was deemed filed.  In material part, the Second Amended Complaint added Mary Carmon ("Carmon") as a party Plaintiff.

[4]     On September 25, 2006, Defendants filed their Answer to the Second Amended Complaint.

[5]     On October 17, 2006, Plaintiff Hameed dismissed her claims, leaving Clark and Carmon as the remaining named Plaintiffs.

[6]     On October 17, 2006, Plaintiffs moved for leave to file a Third Amended Complaint in material part seeking to join Universal Underwriters Insurance Company ("Universal Underwriters") and Western Surety Company ("Western Surety") as Defendants.

[7]     On February 7, 2007, the court entered a Case Management Order, granting in material part the Plaintiffs' motion to amend and deeming the Third Amended Complaint filed as of that date (unless otherwise indicated, the Third Amended Complaint will be referred to in this Order as the "Complaint").

[8]     On February 27, 2007, Defendants filed their Answer to the Complaint.

[9]     On August 18, 2008, Plaintiffs Clark and Carmon filed their Motion for Class Certification (the "Motion").

[10]    On November 12, 2008, the court heard oral argument on the Motion.

II.

THE PARTIES

[11]    Plaintiffs Clark and Carmon are citizens and residents of North Carolina.

[12]   The Complaint names as Defendants the following corporate entities alleged to be organized and authorized to conduct business under the laws of the State of North Carolina:

(a)   Alan Vester Auto Group, Inc., d/b/a Alan Vester Auto Sales, d/b/a Alan Vester Auto Outlet of Roxboro and d/b/a Alan Vester Mitsubishi;

(b)   Alan Vester Motor Company, Inc., d/b/a Alan Vester Honda;

(c)   Alan Vester Nissan, Inc., d/b/a Alan Vester Automotive of Greenville;

(d)   Alan Vester Auto Mart, Inc.;

(e)   Alan Vester Ford Lincoln Mercury, Inc., d/b/a Alan Vester Auto Outlet;

(f)   Alan Vester Auto Mart of Kinston, Inc. (the "Kinston Dealership");[1]

(g)   Alan Vester Management Corporation; and

(h)   Alan Vester Enterprises, LLC, d/b/a Alan Vester Auto Mart of Selma

(collectively all of the above Defendant entities may be referred to in this Order as "Vester" or the "Vester Defendants," depending on context).

[13]   Among other things, the Vester Defendants are in the retail business of selling automobiles to the public.

---

[1] On January 11, 2008, Defendants filed a Chapter 7 Petition of Bankruptcy for the Kinston Dealership. This triggered an automatic stay under the Bankruptcy Act. Plaintiffs have not dismissed their claims against the Kinston Dealership, but have not further litigated them either, in light of the stay. While the claim against the Kinston Dealership is stayed by the bankruptcy proceeding, it is the Plaintiffs' contention that the claim against the sureties on the bond is viable since under the Dealer Act a consumer may sue "either the principal, the surety, or both," *Bernard v. Ohio Cas. Ins. Co.*, 79 N.C. App. 306, 310 (1986), and the purpose of the Act is to allow consumers recourse where dealers have gone out of business. The Vester dealerships had surety bonds chiefly through Universal Underwriters, a large surety and insurance carrier for car dealers. While Plaintiffs do not seek to certify a class that would recover against the Kinston Dealership, Plaintiffs contend that Universal Underwriters, as surety for that dealership, would stand in its stead should there be a recovery as to the Kinston dealership.

[14]  Defendant Universal Underwriters is a corporation duly organized and authorized to conduct business under the laws of the State of Kansas.

[15]   Defendant Western Surety is a corporation duly organized and authorized to conduct business under the laws of the State of South Dakota.

## III.

## THE MOTION

[16]  Clark.  Plaintiff Clark seeks to have certified a class of vehicle purchasers with regard to down payment practices under the Motor Vehicle Dealers and Manufacturers Licensing Law, N.C. Gen. Stat. § 20-285, *et seq.* (the "Dealer Act") (henceforth in this Order, references to sections of the North Carolina General Statutes will be to "G.S.") and the Unfair and Deceptive Trade Practices Act, G.S. 75-1.1, *et seq.* ("Chapter 75") (collectively Clark's "Claims" or the "Down Payment Claims").

[17]  Carmon.  Plaintiff Carmon seeks certification of a class of consumers who were sent mailers under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA Claim").  However, by separate Order of even date herewith, the court has granted Defendants' Motion for Summary Judgment with regard to Carmon's FCRA Claim.  Accordingly, the FCRA Claim has been dismissed and further discussion of it in this Order is not necessary.

## IV.

## DISCUSSION

[18]  In North Carolina, class actions are governed by Rule 23.

[19]     Rule 23(a) provides: "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued."

[20]     The party seeking to bring a class action under Rule 23(a) has the burden of showing that the prerequisites for utilizing the class action mechanism are present. *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 282 (1987).

[21]     The requirements for class certification are (a) commonality, in that the named and unnamed members each have an interest in either the same issue of law or of fact, and which issue predominates over issues affecting only individual class members; (b) numerosity, in that the class must be so numerous as to make it impracticable to bring each member of the class before the court; (c) the party representing the class must fairly and adequately ensure the representation of all class members, including those outside the jurisdiction of the court and (d) adequate notice must be given to the class members. *Id.* at 280-84; *see also Nobles v. First Carolina Communications*, 108 N.C. App. 127, 132-33 (1992); *Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683, 697 (1997).

[22]     Where all the prerequisites are met, it is within the trial court's discretion to determine whether a class action is superior to other available methods for the adjudication of the controversy. *Id.* at 284. Further, the trial court has broad discretion in deciding whether a class action should be certified and is not limited to consideration of matters expressly set forth in Rule 23 or in case law. *Id.*

[23]     When making class certification decisions the trial court should not prematurely determine the merits. *Maffei v. Alert Cable TV of NC, Inc.*, 316 N.C. 615,

617-18 (1986) (*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)).

Further, it is not for the court to determine at the time of class certification whether the common questions guarantee a determination of liability. *Tomlin v. Dylan Mortgage, Inc.*, 2002 NCBC 1, ¶ 9.

A.

Clark's Down Payment Claims.

[24]    At times material in 2003, Plaintiff Clark purchased a used Mitsubishi automobile from Alan Vester Enterprises, LLC, d/b/a Alan Vester Auto Mart of Selma. The sales contract reflects a purported cash down payment of $2,000.  Clark testified he made no down payment.

[25]    Clark contends that Vester (a) routinely marketed vehicles as "no money down," (b) inaccurately represented in bills of sale and other contract documents that cash down payments were made when they were not and (c) internally accounted for the false down payment practice on documents known in the trade as cover sheets ("Cover Sheet(s)") under the line item "CFA."  Plaintiff contends that if a customer actually made a down payment, the dealership would provide the customer with a written receipt.

[26]    Clark further contends that Vester followed these practices so as to (a) increase the likelihood that subprime loans would be funded and (b) obtain loan approvals for higher amounts from lenders.  He alleges that Vester would manipulate the total selling price of such a vehicle to recoup any false down payment amount; and that Vester accounted for the actual facts of the sale on the Cover Sheets, which were deliberately hidden both from customers and lenders.  Plaintiff contends that Vester did

not put prices on used car window stickers so that it could more easily manipulate ultimate prices. Clark further contends that Vester's alleged failure to disclose or secure customer approval when applying a "dealer rebate" as a down payment was unlawful.

[27] In Clark's sales file (a "Deal File"), the bill of sale indicates a down payment of $2,000 was made. However, there is no cash receipt, which is consistent with Clark's testimony that he did not pay $2,000 down. There is no Cover Sheet in Clark's Deal File.

[28] The Vester dealerships were licensed under the Dealer Act, which provides a cause of action to an aggrieved consumer. G.S. 20-288(e). The Dealer Act requires that at the time of delivery of a vehicle the dealer must provide a written instrument describing "clearly" certain items, including "the cash paid down by the buyer." G.S. 20-303. Further, the North Carolina Dealer Regulations[2] provide that the dealer must document in writing the cash paid down by the customer. The forecast of evidence before the court supports Clark's allegations that Vester violated this statute by not delivering to him a written statement describing clearly the cash paid down by the buyer.[3]

[29] Clark contends that Vester's unlawful practices with regard to such automobile sales proximately damaged him and other purchasers by resulting in an overstatement of the sales price, sales tax, finance charges, the amount financed and total amount of payments as reflected in a particular purchaser's retail installment sales

---

[2] North Carolina Department of Transportation Division of Motor Vehicles License & Theft Bureau, Motor Vehicle Dealer and Manufacturer Regulation Manual, p. 59 (March 2009), *available at* http:www.ncdot.org/dmv/forms/licensetheft/download/dealerregulationmanual.pdf.

[3] *See generally Knapp v. Americredit*, 245 F. Supp. 2d 841, 844-51 (S.D.W. Va. 2003) (denying summary judgment on claim alleging use of false down payment scheme to obtain financing); Order dated Jan. 26, 2004 (enjoining dealer from "[e]ntering into a financed vehicle transaction that discloses an amount as a cash down payment that in fact is not paid in cash at the time of consummation of the transaction").

contract. The forecast of evidence before the court supports Clark's allegations of damages in this regard.

[30] G.S. 20-308.2(c) provides that "[a]ny provision of any agreement . . . which is in violation of any section of this Article shall be deemed null and void and without force and effect." With regard to his Claims, Clark contends that the false contract provision reflecting payment by him of a $2,000 cash down payment is null and void and without force and effect; and that the court can reform the contract and order refund of any overcharges by Vester. He further contends that he and putative class members are entitled to refunds of any overcharge as a matter of damages or equitable relief.

[31] Clark also contends that the violation of the Dealer Act may also constitute a violation of Chapter 75. *See Moretz v. Miller*, 126 N.C. App. 514, 517 (1997) (noting that "violation of a statutory provision designed to protect the consuming public may constitute an unfair and deceptive practice as a matter of law"), *rev. denied*, 347 N.C. 137 (1997); *Stanley v. Moore*, 339 N.C. 717, 724 (1995); *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 470 (1986); *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 98-99 (1985); *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180 (1980); *Edmisten v. Zim Chemical Co.*, 45 N.C. App. 604 (1980).

[32] Clark asks the Court to define a class with regard to his Claims as follows: "All individuals sold used motor vehicles by a North Carolina Vester dealership from February 7, 2002, to present,[4] where (a) the sale was financed; (b) the bill of sale

---

[4] The February 2002 starting date is four years before the complaint was filed, pursuant to the Chapter 75 statute of limitations. It is inclusive of the claim under the Dealer Act as well, which is subject to a three-year statute.

reflects cash down; and either (i) there is a cover sheet reflecting a CFA entry or (ii) there is no cash receipt for the down payment."

[33]    The Vester Defendants contend that the issues raised by Clark's Claims do not meet the requirements for a class action, and that any prospective claims by either Clark or other potential plaintiffs are too disparate for class treatment and therefore should be litigated individually and not collectively.

[34]    The court is forced to agree with Plaintiff Clark that his Claims meet the requirements for declaration of a class.

[35]    Commonality.  In this action, common issues predominate over individualized issues.  The central issue is whether Vester falsified a cash down payment.  The method of determining damages will not vary by class member.  *See Tomlin, supra*, 2002 NCBC 1 at ¶ 10 (noting that method of determining amount of class member's damages will not vary).  Further, the facts alleged in this action present a common question with regard to whether the false down payments alleged by Plaintiff Clark were unfair and deceptive.  *Id.* (noting that determination of whether company practice was unfair was common to class).

[36]    Numerosity.  Clark contends that the exact size of the putative class is likely to range in the thousands, given that the various Vester dealerships sold thousands of used vehicles.  Here, the members of the putative class with regard to Clark's Down Payment Claim are sufficiently numerous so as to certify a class.

[37]    Adequacy of Representation.  To represent the class members in this case fairly and adequately, the Plaintiffs must have no conflict with the members, and must have a genuine personal interest in the outcome of the case.  *Tomlin*, 2002 NCBC

at ¶¶ 19-29.  Plaintiff Clark has no conflict with other potential class members and has an interest in the outcome of the action.  He has been sufficiently diligent in his involvement in this case.  He is represented by experienced and knowledgeable legal counsel, has shown a basic knowledge of the basis of his Claims and is an adequate class representative.

[38]    Superiority of Class Vehicle.  Here, (a) common issues predominate, (b) the named representative will adequately protect the interests of the members of the proposed class and (c) the class members are sufficiently numerous.  Consequently, the prerequisites for a class claim having been met, it is within the trial court's discretion to determine whether "a class action is superior to other available methods for the adjudication of th[e] controversy."  *Crow,* 319 N.C. at 284.  In the instant action, the Claims involve alleged false down payments and improperly disclosed dealer rebates in motor vehicle sales that were documented by forms with standardized language and which are subject to uniform accounting practices and uniform damages.  The court concludes, in its discretion, that a class action is a superior method for adjudicating Clark's Claims.

[39]    With regard to his Down Payment Claims, Clark therefore has demonstrated the existence of a class pursuant to Rule 23.

[40]    Exceptions to the Plaintiff Class.  Defendants contend some customers signed arbitration clauses barring class action participation.  Further, Plaintiff asks the court to exclude from the Plaintiff class any vehicle sales involving Lawrence Harris or Jonathan Stokes, former Vester employees represented by one of the Plaintiffs' law firms.  The court finds both requests reasonable.  Accordingly, (a) the class shall not

include any purchasers who signed arbitration agreements as part of their purchase from a Vester entity, and (b) no sales shall be included in the class in which the sales person was either Lawrence Harris or Jonathan Stokes.

[41]     The Defendant(s).  Plaintiff Clark contends that the management and control of the various Vester Defendants was sufficiently intermingled, and their respective corporate structures sufficiently disregarded, that in this action they all should be treated as one for liability and class action purposes; and that he has standing to prosecute all such claims.  He bases his contention on theories of corporate veil piercing, joint venture, conspiracy, partnership and assignment; and he also argues that there exists a sufficient "juridical link" between the respective Vester Defendants to support a conclusion that they all should be defendants in the alleged class claims.

[42]     Plaintiff cites a number of reported cases from other jurisdictions in support of his position.  Two of those certified classes against management companies for the conduct of their chain of dealerships.  *See Galura v. Sonic Automotive, Inc.* (order granting plaintiffs' motion for class certification, dated June 3, 2005, 13th Judicial Circuit, Hillsborough County, *aff'd in part,* 961 So. 2d 961 (Fl. Ct. App. 2007)), where plaintiffs had gone to particular automobile dealerships in Florida.  There, the court found that common issues existed regarding the parent entity's ownership, control and management of its other dealerships in Florida, and it certified a class against the parent company with regard to every dealership it owned in Florida.  *See also Phillips v. Andy Buick, Inc.*, 2006 WL 3183277 (Ohio Ct. App. Nov. 3, 2006) (certifying class against the named defendants and against "any dealerships that they own, manage, direct and/or

control" on a claim regarding allegedly unfair and deceptive fees added into automobile sales deals).

[43]    On the other hand, Defendants contend that Clark lacks standing to sue any Defendant other than Alan Vester Enterprises, LLC, d/b/a Alan Vester Auto Mart of Selma, the dealership from which Clark bought his used Mitsubishi automobile. Consequently, they argue that that Clark's Down Payment Claim may only be certified as a class action against that entity. They contend that because Clark has not alleged any dealings with any other Vester Defendant, he would have no personal claim against the other Vester Defendants, and would have no standing to allege an injury arising from their conduct. Accordingly, he would be unable to represent unnamed class members against any of the Vester Defendants except Alan Vester Enterprises, LLC. In support of their argument, Defendants cite *Nixon v. Alan Vester Auto Group, Inc.*[5] In that matter, which also alleged class claims against a number of Vester automobile dealerships, and other party defendants, the Court dismissed plaintiff's claims against all Vester dealerships except the one from which she purchased an automobile.[6] The court there found no cases in which a subsidiary has been held liable for the actions of another subsidiary operating at the same level of corporate structure. The plaintiff's attempts to avoid the standing problem through allegations of conspiracy between the subsidiaries were not convincing to the court, and the court concluded that a sufficient juridical link between the various defendants and the plaintiff's class claims did not

---

[5] 1:07cv839, 2009 U.S. Dist. LEXIS 10870 (M.D.N.C. Feb. 12, 2009).
[6] The court also allowed the claims to proceed against Alan Vester individually, apparently based on evidence that Alan Vester directed an alleged conspiracy involving all the dealerships "from the top down." *Id.* at 88. He is not a party Defendant in the instant action.

exist.[7]  Rather, the court concluded that plaintiff failed to show that any dealership, other than the one from which she purchased her automobile, took any action at all in regard to her purchase.  Consequently, reasoning that a subsidiary cannot be held liable for the actions of another subsidiary, the court dismissed all claims against the non-selling dealership defendants.

[44]  Standing In General – Multiple Defendants.  In the context of a class action, and as argued by Defendants here, it often is said that a representative plaintiff must have individual standing as to any defendant in order to assert a class claim against that defendant.  Consequently, as reflected in *Nixon*, *supra*, courts typically are reluctant to certify a defendant class in the context of a plaintiff class.  *Id*.  Certainly, if the class representative has standing to state an individual claim against each defendant or if the respective defendants have exposure to joint and several liability, all such defendants properly can remain in the case.  Here, Plaintiff Clark contends the evidence will support his standing to go forward with various claims against the Vester Defendants.  Those claims rest on various theories of civil conspiracy, joint venture, partnership and insufficient corporate veil (Plaintiffs' "Standing Theories"), each of which would portend joint and several liability for the respective Vester Defendants should Clark ultimately prevail.[8]

[45]  The Juridical Link.  Plaintiff also argues that even if in the final analysis, the evidence does not support the above Standing Theories, the facts of record support

---

[7] *Id.*
[8] In order to show standing with regard to such claims, a plaintiff ordinarily must show injury that is "fairly traceable to the challenged action of the defendant."  *Neuse River Foundation, Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114 (2002).

application of the concept of a juridical link between all the Vester Defendants that would allow this action to go forward as a class action against all the Vester entities.

[46]     In this regard, a number of jurisdictions have recognized an exception to the literal standing requirement in a class action where defendant members are related in what is characterized as a "juridical link," which in substance is defined as the existence of a legal relationship between two or more defendants in a way such that resolution of the disputed claims in a single civil action is preferable to numerous disparate, but similar actions.   It has been defined as follows:

> The "juridical-link doctrine" answers the question of whether two defendants are sufficiently linked so that a plaintiff with a cause of action against only one defendant can also sue the other defendant under the guise of class certification.  The juridical-link doctrine is not relevant to the issue of standing, and is properly confined to an analysis of the prerequisites to class certification.  A juridical link sufficient to confer standing generally must stem from an independent legal relationship.  It must be some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member.  This link may be a conspiracy, partnership, joint enterprise, agreement, contract, or aiding and abetting which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class.

> 32B Am. Jur. 2d. § 1590 (2009).

[47]     Except as argued but rejected by the federal district court in *Nixon*, *supra,* the parties have not cited, and the court has not found, any reported North Carolina cases dealing with the concept of the juridical link[9] in a manner relevant to the context

---

[9] Not directly on point, but instructive are:  *Faircloth v. Fin. Asset Secs. Corp., et al*, 87 Fed. Appx. 314, 318 (4th Cir. 2004); *Dash v. Firstplus Home Loan Trust 1996-2, et al*, 248 F. Supp. 2d. 489 (M.D.N.C. 2003).

of this civil action; and the court deems this to be a matter of first impression for the North Carolina courts.

[48]  Here, with regard to Plaintiff's juridical link argument, the Plaintiff in substance claims that the conduct of the various Vester Defendants about which he complains was dictated by Alan Vester and Defendant Alan Vester Management Corporation, and that a juridical link exists between the Vester Defendants sufficient to support Plaintiff's class claims against each of them as a collective group.  He contends such a vehicle is the superior and most efficient mechanism for management of Clark's claims in behalf of the class.

[49]  In this regard, Clark has proffered evidence, and the court FINDS, for purposes of the Motion, that:

(a)  Alan Vester Management Corporation managed the various Vester dealerships.[10]  It hired a compliance manager who supervised compliance for all dealerships.[11]  They all had the same president, Alan Vester.[12]  They had periodic managers' meetings with Alan Vester.[13]  Alan Vester set companywide policies, and in his affidavit refers to all the stores together as the "Alan Vester Company."[14]  The compliance policy itself is directed to every "employee of the company."[15]  Vester transferred managers between stores and the stores made loans to each other.[16]  Customer deals that began at one store could be

---

[10] Alan Vester Dep., pp. 29-30.
[11] Williamson Dep., pp. 6 and Ex. 14, ¶ 1; Alan Vester Dep., pp. 30-31.
[12] *Id.*, Ex. 33.
[13] Alan Vester Dep., p. 66.
[14] *Id.*, Ex. 37.
[15] *Id.*, Ex. 43.
[16] Martin Dep., pp. 16, 357, 374-75.

completed at another.[17]  Vester represented that various stores were owned and operated "under the same corporate structure" and thus one dealer agreement could be used for all.[18]

(b)    All dealership stores were managed by Alan Vester Management Corporation, of which Alan Vester was the president[19].  It was pursuant to his instructions that "Alan Vester dealerships" engaged in relevant acts.[20]  "[T]he dealerships [were] managed by Alan Vester Management Company."[21]  Alan Vester testified as to the "Alan Vester Company's standard practice" regarding cover sheets.[22]  The Management Company "sits on top of these corporations to try to manage them."[23]

(c)    Mr. Williamson checked compliance "within the organization" and "within the company."[24]  There was one compliance manual for all stores.[25]  Mr. Williamson was employed by Alan Vester Management.[26]  He was an employee of the management company when he and Alan Vester destroyed the Cover Sheets.[27]  The compliance policy did not differentiate between entities, but was directed to every "employee of the company."[28]

---

[17] Lowery Aff.
[18] Pls.' Br. Supp. Mot. Class Certif., Ex. 65.
[19] Alan Vester Aff., ¶ 1.
[20] *Id.*, ¶ 2.
[21] *Id.*
[22] *Id.*, ¶ 10.
[23] Alan Vester Dep., pp. 29-30.
[24] Williamson Dep., pp. 62-63.
[25] *Id.* at 65.
[26] *Id.* at 6.
[27] Williamson Aff., ¶ 1.
[28] Alan Vester Dep., Ex. 43.

(d)     Accounting was centralized at the Roanoke Rapids and Oxford dealership stores.[29]  Alan Vester was the president of every store.[30]  Ralph Moore was outside accountant for all the stores.[31]  All the stores had common officers, consisting of Vester family members.[32]

(e)     Marie Johnston processed deals over the years for the Wilson, Kinston, Selma and Greenville dealership stores as well as the franchise stores (Alan Vester Ford, Honda and Nissan).[33]  Tina Robinson processed deals for the Mitsubishi store in Oxford, and the Henderson and Burlington stores.[34]  The controller for all the retail dealership was Alan Vester's daughter, Kristin Martin, who was employed by Alan Vester Management.[35]

(f)     The dealership stores made loans to each other.[36]  Employees would be moved from one store to another; for example finance manager David Getty worked at the Wilson, Selma and Henderson stores.[37]  The managers for all the stores would meet at Alan Vester's "lake house" or at a hotel once a month.[38]  Satellite store deal information was input into the "main computer system" in Roanoke Rapids.[39]  The normal sales process at the different Vester stores was "essentially the same."[40]

---

[29] Williamson Aff., ¶ 4; Alan Vester Dep., pp. 48-49.
[30] *Id.* at 22-23.
[31] *Id.* at 27-29.
[32] *Id.*, Ex. 33.
[33] Johnston Dep., pp. 4-8, 22-24, 27-28, 36-37.
[34] Robinson Dep., pp. 20-21, 80-82.
[35] Martin Dep., pp. 14, 60-61, 87.
[36] *Id.* at 373.
[37] Getty Dep., pp. 7-10.
[38] *Id.* at 11, 13-14.
[39] *Id.* at 61.
[40] *Id.* at 77.

(g)    A civil settlement agreement between the North Carolina Attorney General and the Vester organization recites that "Alan Vester and Rodney Vester, along with others, own, manage, and control the operations of the Vester Dealerships."[41]  The dealerships "jointly and severally" paid a monetary amount.[42]

[50]    The evidence here is disputed as to whether (a) Vester management failed to maintain a separate corporate identity between the various Vester Defendants; (b) one or more of the Vester Defendants at times material was acting as the alter ego or as the "mere instrumentality" of Alan Vester Enterprises, LLC[43] or (c) there existed a joint venture, conspiracy, partnership or assignment relationship between the various Vester Defendants.  However, notwithstanding traditional notions and requirements of standing, the court concludes that the facts of record reflect a sufficient juridical link between the Vester Defendants to support a determination that this action should proceed as a class action against all the Vester Defendants.

[51]    Consequently, in its discretion the court concludes that Plaintiff Clark has demonstrated that a class exists with regard to his Down Payment Claims, and that either he has standing to bring his class Claims against the Vester Defendants or there exists a sufficient juridical link between his Claims and the Vester Defendants.

[52]    <u>The Plaintiff Class</u>.  Therefore, with regard to Clark's Down Payment Claims, a Plaintiff class should be certified to exist, and be defined as:

---

[41] Settle. Agmt., ¶ 1.

[42] *Id.* at ¶ 5.

[43] One of these circumstances typically being necessary for Clark to have standing to sue Vester Defendants other than Alan Vester Enterprises, LLC.  The *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8 (1966); *Whitehurst v. FCX Fruit and Vegetable Service*, 224 N.C. 628 (1944).

(a)     Any individuals who were sold used motor vehicles by either Alan Vester Auto Group, Inc., d/b/a Alan Vester Auto Sales, d/b/a Alan Vester Auto Outlet of Roxboro and d/b/a Alan Vester Mitsubishi; Alan Vester Motor Company, Inc., d/b/a Alan Vester Honda; Alan Vester Nissan, Inc., d/b/a Alan Vester Automotive of Greenville; Alan Vester Auto Mart, Inc.; Alan Vester Ford Lincoln Mercury, Inc., d/b/a Alan Vester Auto Outlet; Alan Vester Auto Mart of Kinston, Inc.[44] or Alan Vester Enterprises, LLC, d/b/a Alan Vester Auto Mart of Selma;

(b)     From February 7, 2002, to the present;

(c)     Which sale was financed;

(d)     Where the bill of sale reflects cash paid down, and either (i) there is a cover sheet reflecting a CFA entry or (ii) there is no cash receipt for the down payment;[45]

(e)     Who did not sign arbitration agreements as part of their purchase from a Vester entity named in subparagraph (a) above; and

(f)     Who did not have as their sales person either Lawrence Harris or Jonathan Stokes.

[53]    Plaintiff Clark's class Claims shall proceed against (a) the Vester Defendants named in the foregoing class definition, (b) Defendant Alan Vester Management Corporation, (c) Defendant Universal Underwriters Insurance Company and (d) Defendant Western Surety Company.

[54]    Caveat.  The class action vehicle is one that seeks a balance between justice for the litigants and efficiency in resolution of class disputes.  In this action, the court concludes that occasional and inevitable individual issues, such as the potential discrete liability of a Vester Defendant as to a particular class member, or as to damages of various class members, are outweighed by the interests of efficiency,

---

[44] *See* fn. 1, *supra*.

[45] Consistent with the court's Order of even date herewith relative to Plaintiffs' Motion for Discovery and Spoliation Sanctions, Plaintiffs will be entitled to the benefit of a limited spoliation inference for purposes of trial.  Consequently, where Deal Files show cash down payments on the bill of sale, but lack a cash receipt, the jury will be allowed to draw an inference that a CFA previously existed and that no down payment in fact was made.

judicial economy and the ends of justice.  However, the parties should bear in mind that it is the duty of the trial court to attempt a fair and reasonable balance of those potentially competing interests; and that it is within the inherent power and authority of the court – indeed, is the duty of the court – when appropriate, to reconsider, alter, amend or withdraw class rulings *sua sponte*.[46] This court will undertake to discharge that duty as this action moves forward toward resolution.

IV.

COSTS OF CLASS NOTICE

[55]    The trial court has broad discretion in determining which party properly bears the costs of identifying and notifying class members of the existence of this matter.  *Frost v. Mazda Motor of America, Inc.*, 353 N.C. 188, 198 (2000).

[56]    The general rule is that the plaintiff should bear such costs, since it is the plaintiff who has the burden of proof, is bringing the suit, seeks to maintain it as a class action and intends to represent the members of the class in prosecuting the action *Id.* at 197.  However, exceptions of this general rule exist.  One of those exceptions has grown out of matters in which there has been abuse of discovery or other pre-trial process by the defendant.  *See e.g.*, *Six Mexican Workers v. Arizona Citrus Growers*, 641 F. Supp. 259 (D. Ariz. 1986) (requiring defendants to pay costs of notice where there had been intentional failure to maintain proper records).

[57]    By separate Order of even date herewith, the court has determined that one or more of the Vester Defendants acted improperly in this action with regard to issues of spoliation and destruction of documents.  Among other things, those issues go directly to the existence and identity of class members.  Accordingly, in the exercise of

---

[46] Newberg on Class Actions, § 7:47 (Fourth Edition).

its discretion, the court determines that the Vester Defendants should bear the costs identifying and notifying class members of this matter.

[58]   The form and mechanics of identify and notifying class members will be determined by the court at a later date.

V.

CONCLUSION

NOW THEREFORE, based upon the foregoing FINDINGS and CONCLUSIONS, it hereby is ORDERED that:

[59]   The Plaintiffs' Motion for Class Certification should be, and hereby is, GRANTED with regard to the Down Payment Claims alleged by Plaintiff John Clark.

[60]   As to the Down Payment Claims, the certified class shall include:

(a)   Any individuals who were sold used motor vehicles by either Alan Vester Auto Group, Inc., d/b/a Alan Vester Auto Sales, d/b/a Alan Vester Auto Outlet of Roxboro and d/b/a Alan Vester Mitsubishi; Alan Vester Motor Company, Inc., d/b/a Alan Vester Honda; Alan Vester Nissan, Inc., d/b/a Alan Vester Automotive of Greenville; Alan Vester Auto Mart, Inc.; Alan Vester Ford Lincoln Mercury, Inc., d/b/a Alan Vester Auto Outlet; Alan Vester Auto Mart of Kinston, Inc. or Alan Vester Enterprises, LLC, d/b/a Alan Vester Auto Mart of Selma;

(b)   From February 7, 2002, to the present;

(c)   Which sale was financed;

(d)   Where the bill of sale reflects cash paid down, and either (i) there is a cover sheet reflecting a CFA entry or (ii) there is no cash receipt for the down payment;"

(e)   Who did not sign arbitration agreements as part of their purchase from a Vester entity named in subparagraph (a) above; and

(f)   Who did not have as their sales person either Lawrence Harris or Jonathan Stokes.

[61]    The Vester Defendants shall bear the costs of identifying and notifying class members of the Down Payment Claims.

[62]    Carmon's FCRA Claim has been dismissed by separate Order of the court.  Consequently, as to the FCRA Claim, the Motion is DENIED.

[63]    The court will conduct a status conference in this matter at 12:00 noon on August 12, 2009, at the North Carolina Business Court at 227 Fayetteville Street, Fourth Floor, Raleigh, North Carolina.  At that time the parties shall be prepared to discuss class management issues, including class notice mechanics and procedures.

This the 17th day of July, 2009.